UNITED STATES, Appellee

v

LYNN A. MAXFIELD, First Lieutenant,
U. S. Army, Appellant

20 USCMA 496, 43 CMR 336

No. 23,366

April 16, 1971

*Major Alan W. Cook* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Colonel George J. Mc-Cartin, Jr.,* and *Captain Monte Engler.*

*Captain Merle F. Wilberding* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain Benjamin G. Porter.*

## Opinion of the Court

QUINN, Chief Judge:

Rated "exceptional" in the performance of duty and the recipient of a Bronze Star for heroism in combat, the accused was involved in an incident in a village in the Republic of Vietnam, which led to his conviction by a general court-martial of assault upon Tang Thi Cuc, with intent to commit rape, and the performance of an indecent act upon another female under sixteen years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. On this appeal, he advances two reasons for reversal of the conviction.

One assignment of error alleges the accused was denied due process because trial counsel did not disclose that the testimony of Private First Class Kerr, described as a "key government witness," had been obtained by means of a grant of immunity from prosecution. See Brady v Maryland, 373 US 83, 10 L Ed 2d 215, 83 S Ct 1194 (1963), and United States v Miller, 411 F2d 825 (CA2d Cir) (1969). In an affidavit obtained as a result of this appeal, trial counsel indicated that before trial he and defense counsel had "discussed the grant of immunity many times." The representation is undisputed. It follows that the assignment of error is ill-founded.

A second assignment of error charges that "various actions" by the convening authority, General Gettys, "cast substantial doubt" upon his impartiality and disqualified him from reviewing the conviction. We need only concern ourselves with one action, that relating to Private First Class Kerr.

On December 7, 1968, Kerr made a sworn statement which was very damaging to the accused. On December 12th, two days before trial, Kerr was granted immunity by Brigadier General Cooksey, who had assumed command of the division because General Gettys had temporarily left the country.[1] General Gettys returned, and resumed command, in time to review the accused's record of trial. In the post-trial advice, the staff judge advocate pointed out that Kerr was an accomplice and his testimony was of "questionable integrity" and had to be "considered with great caution." He also noted that Kerr had been granted immunity by General Cooksey, as acting division commander during General Gettys' absence. His comments on the effect of the latter circumstance are as follows:

". . . You were out of country at the time of this grant and took no part in its acceptance. However, if the fact that the Division Staff Judge Advocate recommended and the Acting Division Commander tendered such a grant has caused you to

[1] Earlier, General Cooksey had constituted a new court-martial to try the accused's case. This action was apparently taken because Townsend had been tried by the court-martial to which the charges had been previously referred by General Gettys.

form a preconceived opinion as to the credibility of Kerr's testimony, you can not act as convening authority. If you have formed any such preconceived opinion, it will be necessary for you to advise me of this fact so that another convening authority can accept jurisdiction."

Appellate defense counsel contend that, since General Cooksey was subordinate to General Gettys and had only temporarily succeeded to command, he was merely General Gettys' "surrogate," and, as such, should be presumed to have taken "only such actions as he believ[ed] would be desired by his boss"; that, in turn, General Gettys, as Cooksey's superior, was not likely "to overrule actions taken for him . . . by his subordinate."

Succession to command, whether temporary or permanent, confers upon the commander all the authority and responsibility of the office. United States v Williams, 6 USCMA 243, 19 CMR 369 (1955); United States v Bunting, 4 USCMA 84, 15 CMR 84 (1954); see also Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 84a. On the basis of my reading of the record, I would conclude that General Cooksey did not act merely as he imagined General Gettys would have wanted him to act, but rather as his own judgment indicated he should act, and that General Gettys' review was not improperly influenced by General Cooksey's action in the case. However, ■■■■■■ ■ my brothers believe that, in the circumstances, it is asking too much of "human behavior" to expect General Gettys to be wholly free of the influence of General Cooksey's action, especially since such action comported with other action that he had himself taken. United States v Keith, 3 USCMA 579, 583, 13 CMR 135 (1953). They conclude, therefore, that General Gettys should not have reviewed the record of trial. See Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 84c.

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for reference to another competent general court-martial authority for a new review under the provisions of Articles 60 and 61, Code, supra, 10 USC §§ 860 and 861, respectively.

Judge DARDEN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree that General Gettys should not have reviewed the record of trial. However, I disagree with my brothers' holding with reference to the first granted issue.

Because of certain events which allegedly occurred in a Vietnamese village on September 15, 1968, the accused was charged with rape, assault with intent to commit rape, and assault with intent to commit sodomy on two "Oriental" females. Each specification alleged that the offense was committed "in conjunction with Specialist Five (E–5) William H. Townsend and Staff Sergeant (E–6) Karoly Czinege." The charge sheet was dated October 4, 1968. On October 18th, the convening authority, Major General Gettys, granted immunity from prosecution to Czinege[1] and the latter's name was deleted from the specifications. Inserted in lieu thereof was "another American soldier." Three days after obtaining the grant of immunity, Czinege executed a new sworn statement before the Article 32 investigating officer. He acknowledged that his prior statement, relative to the events of the day in question, was not entirely true. On November 9th, General Gettys directed that the accused "be tried in a common trial with Specialist Five William H. Townsend" by a court-martial appointed by him under Appointing Order Number 25. On November 18, 1968, General Gettys accepted Townsend's offer to plead guilty to a single specification of assault with intent to commit rape, if the two other charges (rape and assault with intent to commit sodomy) were dismissed. A sentence not to exceed dishonorable dis-

---

[1] See Appendix.

498

charge, total forfeitures, and confinement at hard labor for *five years* was agreed upon. On the following day, Townsend pleaded guilty, as per the agreement, before the court-martial appointed by order Number 25, and was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for *eight years*. On March 20, 1969, General Gettys affirmed these findings but approved only so much of the sentence as provided for confinement at hard labor for *three years,* in addition to the other penalties. The difference between the agreed upon five years' confinement and the three years approved was in return for Townsend's testimony in the case against the accused.

On December 12th, while General Gettys was temporarily away from his command, his subordinate, Brigadier General Cooksey, Assistant Division Commander, granted immunity from prosecution to Private First Class Ralph J. Kerr,[2] who had on December 7th executed a statement involving the accused in the charged offenses. The accused was tried on December 14th[3] by a court-martial convened by General Cooksey by Appointing Order Number 27. (A new court was necessary because of Townsend's plea of guilty to a charge of assault with intent to commit rape "in conjunction with First Lieutenant Lynn A. Maxfield and another American soldier," before the originally designated court.) The accused was convicted of assault with intent to commit rape, "in conjunction with Specialist Five (E–5) William H. Townsend and another American soldier" and of committing "an indecent act upon the body of . . . a female under sixteen years of age, by forcing her to sit or lie on a bed and by lying against her nude body, with intent to gratify the sexual desires of the said First Lieutenant Lynn A. Maxfield." He was sentenced to dismissal from the service, total forfeitures, and confinement at hard labor for five years. On

April 20, 1969, one month after his reduction of Townsend's sentence to confinement, General Gettys approved the conviction of the accused. However, because of error deemed prejudicial as to sentence, he directed a rehearing as to sentence alone. On rehearing the accused was sentenced to three years' confinement at hard labor, in addition to dismissal and total forfeitures. The confinement was further reduced to thirty months by the Court of Military Review.

At the accused's trial, Townsend and Kerr both testified but Czinege did not and the record is silent as to why the Government failed to produce him as a witness after having granted him immunity from prosecution.

According to Townsend's testimony, he entered a Vietnamese home with the accused and another serviceman. Initially, he stated that he was unaware of the identity of the third man. Later he testified that he did know him but was told by trial counsel not to reveal his name. Townsend attempted to have intercourse with one of two young women present in the home and, according to his testimony, the accused helped him by holding her legs for a short period of time. Maxfield's aid was unsolicited. Townsend was unable to state what the accused did thereafter "[b]ecause I wasn't paying any attention." On cross-examination, Townsend acknowledged that the first time he mentioned that the accused had helped him by holding the girl's legs was during his post-trial interview. He did not know why he waited until that time. The fact that Townsend had pleaded guilty was brought out in cross-examination[4] but no disclosure was made with reference to the fact that the two other charges against him had been dropped in return for his agreement. Townsend testified that he had not been promised leniency in return for his testimony in this case.

---

[2] See Appendix.
[3] When the accused was tried, the charge of rape had been deleted.
[4] The disclosure that Townsend had been sentenced to confinement at hard labor for eight years was part of the reason for the rehearing on sentence in this case.

Kerr testified that he entered the home with the accused and Townsend. He corroborated Townsend's testimony that the accused assisted Townsend by holding the girl's legs. At that point, according to Kerr, the accused attempted to have intercourse on a bunk with the other female. When he was unsuccessful, because of an inability to attain an erection, Kerr made a similar attempt. When he also failed, he grabbed the girl by the hair and forced her to commit an act of oral sodomy on his person. As he finished, Sergeant Williams entered and ordered them all to leave. On cross-examination, Kerr testified that during the sequence of events, Sergeant Czinege entered, stayed a few seconds, and then departed.

The two victims testified as to the assaults on their persons but were unable to identify any of their attackers. Sergeant Williams, the only other witness for the Government, testified that through a window of the home he "saw three GIs and two girls." The girls were partially nude. When he entered, he was able to identify, by use of a flashlight, Townsend, Czinege, and the accused. Townsend was on the floor with a girl, Czinege was standing by the door and the accused was standing behind a wall or partition. The accused was fully dressed. Czinege and Townsend had on trousers but no shirts. At no time did he observe the accused standing by the bed. The wall or partition is fifteen or twenty feet from the bed. When Williams ordered them to leave because they had no business being there, all three complied. The defense presented no evidence on the merits.

With regard to trial counsel's alleged failure to disclose that Kerr had been granted immunity, appellate Government counsel have supplied us with an affidavit from trial counsel in which he contends that he and defense counsel, close personal friends, frequently discussed the grant of immunity to Kerr, prior to trial; hence, there could not possibly be any element of surprise. As the affidavit discloses, "It was Captain Baker's [defense counsel] trial tactic to try and discredit PFC Kerr at trial by showing the court that he was a perpetrator who had gone without punishment."

If in fact it was defense counsel's trial tactic to attempt to discredit Kerr, he did an excellent job of concealing it. Not only did he fail to make known to the court members the fact that Kerr, the Government's principal witness, was testifying under a grant of immunity from prosecution for his part in the events in question, but he did little to shake his testimony or to establish in Kerr a lack of credibility. Defense counsel's total cross-examination of Kerr was as follows:

"Q. Private Kerr, did anyone else walk in the room while you were in there?

"A. Yes, sir.

"Q. Who was that?

"A. Sergeant Czinege walked in.

"Q. Sergeant Czinege walked in?

"A. Yes, sir.

"Q. How was Lieutenant Maxfield dressed?

"A. He was fully dressed, sir.

"Q. Fully dressed at all times?

"A. Yes, sir. He didn't have a top on, sir.

"Q. He had a fatigue jacket on, didn't he?

"A. Yes, sir.

"Q. At all times?

"A. Yes, sir."

Kerr's testimony was especially damaging to the accused because he not only testified that the accused attempted to have intercourse with one of the girls but he also corroborated Townsend's testimony as to the assistance rendered to him by the accused, with the other. Defense counsel's only reference to Kerr in his argument on findings was to recount Kerr's testimony that he himself forced the girl to commit an act of oral sodomy on his person; that Sergeant Czinege walked in and out of the room; and that the accused was clothed at all times.[5] He suggested

---

[5] The victim of the sodomy testified that the man who laid on her body did not wear a shirt.

to the court that Czinege (the absent Government witness to whom immunity was granted) was the actual perpetrator of the charged offenses and that there was a conspiracy " 'to get this officer'."

Trial counsel was not restrained by the grant of immunity. He took advantage of the court's ignorance of this fact by arguing the "government contends that PFC Kerr is worthy of your belief· concerning his testimony." He highlighted the voluntary nature of Townsend's testimony by stating, "No one could force him to testify at this trial." And he capped his argument by saying, "Gentlemen, if you believe these eye witnesses, the people who actually saw Lieutenant Maxfield do what they testified what he did, then it is your duty as members of this court to convict the accused." In rebuttal, trial counsel went even further:

". . . Why would PFC Kerr appear before you people and tell a sordid story about having a 14 year old Vietnamese girl perform an act of oral sodomy on him in an attempt to burn an officer? What evidence is there to show to you that PFC Kerr would do that? I don't know how PFC Kerr felt when he testified to you. I have no idea. Nobody asked him how he felt. But gentlemen, with a little logic and common sense, you can all tell yourselves that PFC Kerr didn't come up here and tell you this sordid story merely in an attempt, as the defense would have you to believe, to burn an officer."

In his instructions to the court, the law officer informed the members that the credibility of the witnesses rested solely upon them as members of the court; that in assessing credibility they should "carefully scrutinize the testimony given, the circumstances under which each witness testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief." He advised them that "a witness is an accomplice if he was culpably involved in an offense for which the accused is charged." He then went on to instruct:

". . . Now the purpose of this advice is to call your attention to a matter specifically affecting a witness's credibility, that is a motive for falsifying testimony. For an example, an accomplice may be motivated to falsify his testimony in whole or in part because of his self-interest in obtaining immunity from pending prosecution or leniency with respect to a sentence adjudged. Accordingly, you are advised that the testimony of an accomplice, even though apparently credible and apparently corroborated is of questionable integrity and should be considered with great caution and given only such weight and credibility as you deem it deserves."

Given the fact that Kerr testified under a grant of immunity from prosecution, can it reasonably be contended that the court members, uninformed thereof, were properly made aware of the factors necessary in determining the credibility to be given to Kerr's testimony? The grant of immunity having been given, the Government carries the burden of establishing credibility in the witness. United States v Stoltz, 14 USCMA 461, 34 CMR 241 (1964); United States v Scoles, 14 USCMA 14, 22, 33 CMR 226 (1963), concurring in the result opinion by Judge Kilday. The grant of immunity does not destroy the *competence* of the witness to testify but the court must be made aware of the terms of the agreement. See United States v Albright, 9 USCMA 628, 26 CMR 408 (1958). The Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 153b, recognizes that the existence of a grant of immunity in a prosecution witness is a matter quite relevant for the purpose of impeaching a witness. The Manual, supra, paragraph 44g, imposes upon trial counsel the obligation to disclose "evidence favorable to the defense." See Brady v Maryland, 373 US 83, 10 L Ed 2d 215, 83 S Ct 1194 (1963); Giles v Maryland, 386 US 66, 17 L Ed 2d 737, 87 S Ct 793 (1967). As the Supreme Court held in *Brady:*

"We now hold that the suppression by the prosecution of evidence favor-

able to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." [*Ibid.*, 373 US, at page 87.]

With regard to this quotation from *Brady,* the court in Williams v Dutton, 400 F2d 797, 800 (CA5th Cir) (1968), stated:

". . . It is now clear that *Brady* imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or *impeaching* evidence." [Emphasis partially supplied.]

The value of such information in opening a viable line of inquiry tending to cast doubt upon Kerr's testimony is apparent.

I am unable to understand the failure of defense counsel to bring to the attention of the court members the fact that Kerr was testifying under a grant of immunity, of which trial counsel avers he was aware. I do not believe, however, that an accused should be penalized for flagrant oversights or neglects of his counsel at trial. See United States v Boberg, 17 USCMA 401, 38 CMR 199 (1968). Cf. United States v Wood, 18 USCMA 291, 40 CMR 3 (1969). The neglect of defense counsel was, of course, magnified by the grossly unfair argument of trial counsel that he did not know why Kerr would testify as he did in "an attempt to burn an officer." If Kerr's testimony were true, he was testifying in order to keep out of jail. Whether he was also attempting to "burn an officer" might be questionable but I note that Sergeant Williams never saw Kerr in the room, only Czinege, Townsend, and the accused.[6] Trial counsel's caution to Townsend not to reveal the name of

the third American soldier in the room, when considered in this light, causes me to be gravely concerned over whether this accused received a fair trial. As the Supreme Court noted in *Brady:*

". . . Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." [*Ibid.*, 373 US, at page 87.]

I would hold that the failure of the Government to disclose at trial the fact that its principal witness was testifying under a grant of immunity from prosecution was prejudicial error. Paragraphs 153*b* and 44*g*, Manual; Brady v Maryland; Giles v Maryland; and Williams v Dutton, all supra. I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.

## APPENDIX

"DEPARTMENT OF THE ARMY
HEADQUARTERS AMERICAL
DIVISION
APO SAN FRANCISCO 96374

18 October 1968

AVDF–CG

SUBJECT: Grant of Immunity

SSG (E6) Karoly Czinege
Company E, 26th Engineer Battalion
APO 96374

1. It is noted that you are a material witness for the Government in the cases of United States v 1LT Lynn A. Maxfield and United States v SP5 William H. Townsend.

2. Your testimony is necessary to the Government in the abovementioned cases and it is anticipated that part of your testimony may be incriminatory in nature. You are hereby granted immunity from prosecution for any offenses arising out of the commission

---

[6] Among the allied papers is a sworn statement by Williams dated September 19, 1968, in which he identified Townsend, Maxfield, and Czinege as being in the room. After their return to their area, Townsend and Czinege argued with him about the incident for fifteen to twenty minutes. In his testimony before the Article 32 investigating officer, Williams asserted that there was no doubt in his mind as to their identities and that there was no one in the room when he entered except Townsend, Maxfield, Czinege, and the two girls.

of or interrogation concerning acts of rape, sodomy, assault, robbery and any other lesser included or closely related offenses against Vietnamese nationals in the village of Son Long, Son Tinh District, Quang Ngai Province, Republic of Vietnam, on the evening of 15 September 1968, concerning which you are compelled to testify or produce evidence for the prosecution. Further, the above grant of immunity shall remain valid in any subsequent rehearing or in any other courts-martial involving different accused but pertaining to the same incident above described.

3. In accordance with paragraph 150b, Manual for Courts-Martial, U. S., 1951, you are required to answer all questions propounded at this or any subsequent trial or rehearing, falling within the scope of this immunity, regardless of whether the answer to such questions would incriminate or tend to incriminate you. Failure to answer such questions may subject you to prosecution for violation of Article 134, UCMJ (wrongfully refusing to testify before a court-martial), the maximum punishment for which is dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for five (5) years, and reduction to the lowest enlisted grade.

/s/ Charles M. Gettys
CHARLES M. GETTYS
Major General, USA
Commanding."

"DEPARTMENT OF THE ARMY
HEADQUARTERS AMERICAL
DIVISION
APO SAN FRANCISCO 96374

12 December 1968

AVDF–JA

SUBJECT: Grant of Immunity
Private First Class Ralph J. Kerr
Headquarters and Headquarters Troop
1st Squadron, 1st Cavalry
APO 96374

1. It is noted that you are a material witness for the Government in the case of United States v 1LT Lynn A. Maxfield.

2. Your testimony is necessary to the Government in the abovementioned case and it is anticipated that part of your testimony may be incriminatory in nature. You are hereby granted immunity from prosecution for any offenses arising out of or interrogation concerning acts of rape, sodomy, assault, robbery and any other lesser included or closely related offenses against Vietnamese Nationals in the village of Son Long, Son Tinh District, Quang Ngai Province, Republic of Vietnam, on the evening of 15 September 1968, concerning which you are compelled to testify or produce evidence for the prosecution. Further, the above grant of immunity shall remain valid in any subsequent rehearing or in any other courts-martial involving different accused but pertaining to the same incident above described.

3. In accordance with paragraph 150b, Manual for Courts-Martial, U. S., 1951, you are required to answer all questions propounded at this or any subsequent trial or rehearing, falling within the scope of this immunity, regardless of whether the answer to such questions would incriminate or tend to incriminate you. Failure to answer such questions may subject you to prosecution for violation of Article 134, UCMJ (Wrongfully refusing to testify before a court-martial), the maximum punishment for which is dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for five (5) years, and reduction to the lowest enlisted grade.

/s/ Howard H. Cooksey
HOWARD H. COOKSEY
Brigadier General, USA
Acting Commander."