### UNITED STATES

### v.

**Second Lieutenant Robert A. YOUNG, 465–98–1820, U. S. Army, 1st Adjutant General Company, 1st Infantry Division, Fort Riley, Kansas.**

### CM 433933.

U. S. Army Court of Military Review.

Sentence Adjudged 15 July 1975.
Decided 27 Feb. 1976.

---

* *United States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972).

Appellate Counsel for the Accused: Richard H. Seaton, Esquire, CPT John C. Carr, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COOK, Judge:

Appellant was tried, by a general court-martial consisting solely of a judge, for the possession and sale of marijuana. These offenses were alleged as violations of Article 92, Uniform Code of Military Justice, UCMJ, (10 U.S.C. § 892). He was found guilty, in conformity with his plea, and sentenced as noted above.

The trial of this case terminated on 15 July 1975. On 23 October 1975, 100 days later, the action required by Article 60, UCMJ and paragraph 84, Manual for Courts-Martial, United States, 1969 (Revised edition), was taken. All parties concede that appellant spent the intervening period in confinement. Because over 90 days elapsed from the date of trial until the date of the action, appellant alleges that he has been substantially prejudiced, invoking the rule in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974),[1] and prays that this Court set aside the findings and sentence in this case and dismiss the charges.

The appellate counsel for the government answers this allegation of error by noting that trial defense counsel requested, on 5 September 1975, that the post-trial review not be completed until he had an opportunity to submit some clemency matters for inclusion therein. Because these materials were not forthcoming until on or after 19 September, the government argues that the period of 14 days from 5–19 September should be considered as a period of defense-requested delay. This would reduce the elapsed time for which the government is accountable under the *Dunlap* rule to less than the tripwire 90 days.[2]

The problem with the government's position in trying to saddle the defense with the entire period between 5 and 19 September is that the government concedes that work was done on the post-trial review during these 14 days. Ergo, not all of that intervening period, if any, can be cast as defense-requested delay.[3]

Although we find the government's position unacceptable in this particular, this Court is still required to attempt to recon-

---

1. The *Dunlap* rule reads as follows:

 "To paraphrase *Burton*, 30 days after the date of this opinion, a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial. In the language of *Burton*, 'this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed.' " (*Id.,* 48 C.M.R. at 754).

2. For the purposes of this opinion, this Court will assume the validity of the government's hypothesis that the rationale in *United States*

 *v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974), is for application in *Dunlap* rule cases.

3. This concession is well taken because for the government to have insisted that it was privileged to have done absolutely no work on the review as a result of the defense counsel's request would have been an unreasonable response to that request. First of all, it is dubious that the request was couched in any such absolute terms. Secondly, even if it had been, the government knew the clemency portion of the review was but a small part thereof and the remainder of the review would have to be written in any event. Therefore, it was incumbent upon the government to prepare the other portions of the review with all due diligence.

struct, from the allied papers and the affidavits submitted on this issue, what actually transpired between 15 July and 23 October to occasion this delay. The ultimate purpose of this reconstruction is to determine whether or not the defense is responsible for ten or more days of the delay and, if not, whether the government met the exculpatory standard of the *Dunlap* rule, i. e., "diligence."

The period between 15 July and 6 August was apparently spent in transcribing and assembling the record. On 6 August, the record was sent from Fort Riley, Kansas, to Fort Meade, Maryland, for the trial judge to authenticate. It returned from the judge on 28 August. Because the convening authority had granted a witness immunity, the record of trial was sent to the office of the staff judge advocate at Fort Carson, Colorado, for review.[4] It arrived at that office on 2 September, i. e., the 49th day.

On 5 September, the request from the trial defense counsel, referred to earlier, was received at Fort Carson by phone. On 8 September, the record was given to the Deputy Chief of Military Justice of Fort Carson for the post-trial review.

A pause at this point in our chronology is necessary in order to attempt to ascertain what transpired concerning the review during the 25 workdays between 8 September and 12 October.

From an extensive affidavit authored by the Chief of Military Justice, we quote:

\* \* \* \* \* \*

"The record of this trial, which was conducted entirely before a military judge alone, is unusually lengthy for a trial consisting solely of guilty pleas (the record is 127 pages long, not including allied papers and exhibits) and required the drafter of the review, while also engaged in his regular assigned duty as trial counsel, to consider issues which were some-

what novel and, therefore, required more than a cursory examination in order to properly advise the convening authority as to the merits of those issues. The first of these issues was raised by a defense motion to dismiss for lack of jurisdiction due to the fact that the alleged offenses occurred off post and were, therefore, not militarily connected. This claim is not particularly new but, in light of numerous civilian cases holding contrary to those in the military, presented to the court in the form of extensive briefs filed by both parties, a thorough consideration of the defense position, was warranted. What did take some time was the defense claim, raising an issue just newly raised in this area, that a military court did not have jurisdiction over the offenses alleged merely because of the fact that the substance involved was marijuana and not a habit forming narcotic drug such as heroin. This entire issue of jurisdiction covered some thirty-five pages in the record (R 13–48) and required the drafter to consider not only the extensive briefs submitted on the issue but the testimony of five seperate (sic) witnesses as well, prior to determining how the convening authority should be advised concerning these issues. He also had to consider the defense's claim of illegal pretrial confinement which, although it had been decided in favor of the accused, still required some consideration prior to advising the convening authority as to the effect of that violation of the accused's rights found by the military judge.

Just as time consuming from the standpoint of preparing the review was the large amount of material submitted in extenuation and mitigation. In the record of trial itself, the sentencing proceedings, consisting primarily of the testimony of seven separate defense witnesses and one prosecution rebuttal witness, covered approximately sixty pages (R 60–120) and further included seven documen-

---

4. See *United States v. Maxfield*, 20 U.S.C.M.A. 496, 43 C.M.R. 336 (1971).

tary exhibits submitted by the defense for consideration by the court. . . . "

The clemency materials, which the trial defense counsel requested be included in this review, arrived on or shortly after 19 September and they consisted of a one and a half pages (legal size), Petition for Clemency, authored by the defense counsel, and a letter from the accused with six single page inclosures. The summary of this material constitutes 43 lines of the 11 page post-trial review.

To continue with our recitation of events, on 14 October, the review was served on "designated" defense counsel. The next entry in the post-trial chronology, submitted by counsel for the government reads,

"14–22 October 1975—

Designated defense counsel contacted by Military Justice Section to call Trial Defense Counsel."

For the purposes of clarifying this entry, we refer to the designated counsel's receipt appearing on the last page of the review:

"I have been furnished a copy of the foregoing review of the Staff Judge Advocate in this case and have personally contacted the trial defense counsel of record. He has been advised of the contents of this review and does not desire to submit matters in explanation or rebuttal."

Thus it appears that nine days were occupied in an effort to comply with the requirement of *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). On 23 October 1975, this odyssey was terminated; the convening authority took his action.

Even after giving the government the benefit of every reasonable interpretation of the recited facts, this Court is unable to find sufficient evidence from which we can conclude that ten days of the 100-day interval is attributable to a defense requested or prompted delay. We do not believe that the defense request of 5 September occasioned any delay other than what would be involved in reading the clemency material when it arrived and composing the 43 lines of the review mentioned earlier. This could hardly take ten days to accomplish.

Just as we are unable to find facts from which to construct a defense-requested delay, we also fail to find facts that support a holding that the post-trial activities of the government in the processing of this case constitute diligence within the meaning of the *Dunlap* rule. Recognizing we have the advantage of hindsight, nevertheless, the Court feels constrained to observe that several periods of time in the management of this case appear exceedingly wasteful. The most conspicuous of these is the 23 days spent in sending the record from Fort Riley, Kansas, to the trial judge at Fort Meade, Maryland. This period could have been substantially decreased by employing one of the other individuals listed in Article 54, UCMJ, for the purpose of authentication. The Court declines to enumerate other periods of a dilatory nature. It is sufficient to note that based on the evidence of record it would appear that with the exercise of due diligence, the processing time of this case could have been brought well within an acceptable period. As there was a failure to do so here, this Court must administer the remedy mandated by *Dunlap v. Convening Authority, supra.*

The findings of guilty and the sentence are set aside. Charges are dismissed.

Senior Judge BAILEY and Judge DeFORD concur.