**UNITED STATES, Appellee,**

v.

**Patrick V. LOCHAUSEN, Private First Class, U. S. Army, Appellant.**

No. 35,327; CM 435367.

U. S. Court of Military Appeals.

March 24, 1980.

For Appellant: Captain Linus Johnson (argued); Colonel Robert B. Clarke, Captain Michael B. Dinning, Captain Demmon F. Canner (on brief).

For Appellee: Captain Robert D. Higginbotham (argued); Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Steven M. Werner (on brief).

*Opinion of the Court*

COOK, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial of drug transactions, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The findings and sentence were approved by the convening authority. The United States Army Court of Military Review affirmed the findings but changed the sentence to conform to the requirements of law. *See United States v. Thompson*, 22 U.S.C.M.A. 448, 47 C.M.R. 489 (1973). We granted review to determine whether the convening authority was disqualified from reviewing the record.

The issue is raised in the following context. The principal witness against appellant was Sergeant Ellis. He testified he was a former drug addict who became involved with the civilian police as an informant. Prior to April 19, 1976, he had received some heroin from appellant for the purpose of sale. Appellant approached him on the morning of the 19th and requested the money which he had anticipated from the sale of the heroin. When Ellis responded that he did not have the money, appellant suggested that he could be repaid by selling more heroin. Shortly after the conversation, Ellis informed the battalion commander of the incident. The battalion commander, in turn, called appellant's company commander, Captain Brower, who arranged clearance for Ellis to proceed to appellant's barracks. No transfer of heroin, however, took place because appellant was not in his room. Subsequently, Ellis contacted appellant, and they agreed that appellant would deliver a quantity of heroin to Ellis' room. Ellis informed his own company commander, Captain Hunt, of the agreement. Ap-

pellant kept the appointment, and, on arrival, threw a cigarette pack on the bed.

Shortly thereafter, both Captain Hunt and Captain Brower entered the room and saw the cigarette package. Appellant and Ellis were apprehended. Later examination indicated the package contained heroin. Additionally, a syringe, needle and cooker were found in Ellis' sleeping bag. Appellant testified that he did not bring the heroin into Ellis' room.

No reference to a grant of immunity or agreement with the Government appears in Ellis' testimony. However, defense counsel introduced a statement Ellis made before the Article 32 officer, in an attempt to show some inconsistency with Ellis' trial testimony. That statement, which was not recorded verbatim, contains the following remark:

> (I have a guarantee I won't be prosecuted) (covers only this thing with Lochausen) Yes sir.

Captain Hunt also testified at trial and his testimony contains no reference to an agreement with Ellis. However, in a post-trial affidavit submitted to the Court of Military Review, he asserted the following:

> I asked SGT Ellis if during the required search I could expect to find any illegal contraband which could be attributed to him. SGT Ellis stated that in his duffle bag I would find a needle and assorted items. I then stated to SGT Ellis that as his company commander, I would not initiate charges under the UCMJ for those items. Furthermore, based on the fact that he had come forward with the information relating to PFC Lochausen, I would not initiate charges under UCMJ for possession of a controlled substance or related offenses which might surface for that one day's specific activities.
>
> Shortly after this, and during the Article 32, I discussed the subject of SGT Ellis with the defense counsel of Lochausen, CPT Rowan. Captain Rowan asked me if any agreements had been made with Ellis. We have a considerable discussion with the thrust being that I did not in-

tend to prefer charges against Ellis for the items found in his room, and that I had so informed Ellis of this decision.

The staff judge advocate noted in his pretrial advice that Ellis testified during the Article 32 investigation that he had a "guarantee," and the staff judge advocate advised the convening authority to consider such matter in assessing Ellis' credibility. The case was referred to trial by Major General Tackaberry. This "guarantee" was not noted in the post-trial review,[1] and the findings and sentence were approved by Major General Robinson as the successor to General Tackaberry.

Appellant submits that the agreement between the government witness and Captain Hunt disqualified the convening authority from taking final action, as Captain Hunt was his subordinate. Indeed, this Court has held that an agreement between a subordinate commander and a government witness that imports a predisposition to believe the witness can disqualify a convening authority from reviewing a record of trial. *United States v. Ward*, 1 M.J. 176 (C.M.A.1975); *United States v. Espiet-Betancourt*, 1 M.J. 91 (C.M.A.1975); *United States v. Chavez-Rey*, 1 M.J. 34 (C.M.A.1975); *United States v. Cruz*, 23 U.S.C.M.A. 238, 49 C.M.R. 291 (1974); *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974); *United States v. Dickerson*, 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973); *United States v. Maxfield*, 20 U.S.C.M.A. 496, 43 C.M.R. 336 (1971). The cases recognize that, under particular circumstances, a reviewing authority can be influenced by the action of his subordinate in regard to the credibility of the witness. *United States v. Dickerson, supra* at 491, 47 C.M.R. at 792; *United States v. Maxfield, supra* at 498, 43 C.M.R. at 338.

Government counsel argue first that the reviewing authority was unaware of the agreement because it was not discussed during the witness' testimony and was not mentioned in the post-trial review. An am-

---

1. We are convinced that under the circumstances presented, any issue as to the adequacy of the post-trial review has been waived. *See United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

biguous reference, however, appears in Defense Exhibit A. For purposes of this appeal, we assume that this was sufficient to place the reviewing authority on notice that the witness was testifying under some form of agreement imparting acceptance of his credibility. *See United States v. Johnson,* 21 U.S.C.M.A. 270, 45 C.M.R. 44 (1972).

Government counsel also assert that as the witness could not have been prosecuted for possession of the heroin or the narcotic paraphernalia found in his room,[2] there was no effective agreement involved. Thus, they contend, Captain Hunt's "assurances" to the witness should not be equated to a grant of immunity or an agreement not to prosecute. However, we need not decide the merits of this contention because we conclude that, even if such an agreement was made, the reviewing authority was not disqualified under the circumstances of this case.

The reviewing authority who approved the findings and sentence of the court-martial was not the same officer who was in command when the agreement was made and when the charges were referred to trial. In *United States v. Maxfield, supra,* the Court held that a convening authority was disqualified when, in his absence, his temporary successor in command granted immunity to a prosecution witness. We rejected the Government's argument that the convening authority could take final action on

the case upon his return to the command because:

> [I]t is asking too much of "human behavior" to expect General Gettys to be wholly free of the influence of General Cooksey's action, especially since such action comported with other action that he had himself taken.

*Id.* at 498, 43 C.M.R. at 338.

Here, Major General Robinson was not in command at the time of the alleged misconduct; nor was Captain Hunt a member of his command at the time he gave his assurances to the witness that he would not be charged. Unlike the convening authority in *Maxfield,* General Robinson had no prior connection with the proceedings. Thus, we conclude that the relationship between Captain Hunt's actions and General Robinson's responsibilities, as a successor commander, is so attenuated as to preclude any reasonable expectation that the general's judgment as to the credibility of the witness was influenced by Captain Hunt's action.

The remaining assignment of error granted review by the Court was decided against appellant in *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

---

2. There is some indication in the record that the narcotic paraphernalia was part of the witness' "cover." As the defense was fully informed of the agreement with Ellis, appellant was not prejudiced by the failure of the Government to reduce the agreement to writing. *See United States v. Webster,* 1 M.J. 216 (C.M.A.1975).