UNITED STATES, Appellee,

v.

Stephen J. TURCSIK, III, Airman First Class, U. S. Air Force, Appellant.

No. 40827.

ACM 22875.

U. S. Court of Military Appeals.

Aug. 9, 1982.

For Appellant: *Captain G. Michael Lennon*, USAFR (argued); *Colonel George R. Stevens, Captain Thomas S. Markiewicz*, USAFR (on brief).

For Appellee: *Lieutenant Colonel Bruce R. Houston* (argued); *Colonel James P. Porter* (on brief).

## OPINION OF THE COURT

COOK, Judge:

Tried by general court-martial, military judge alone, on June 18 and 19, 1980, the accused was convicted, despite his pleas, of attempting to use tetrahydrocannabinol; use, introduction, sale, and transfer of amphetamines; and possession of lysergic acid diethylamide; and pursuant to his pleas, of absence without leave and use of marihuana, in violation of Articles 80, 92, 134, and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 934, and 886, respectively. The approved sentence extends to a dishonorable discharge, confinement at hard labor for 4 years and 9 months, forfeiture of $300 pay per month for 57 months, and reduction to Airman Basic. The Air Force Court of Military Review affirmed the findings and sentence in an unpublished opinion.

The case was submitted to us on the merits, and we specified the following issue:

WHETHER THE COMMANDER OF NINTH AIR FORCE WAS DISQUALIFIED FROM ACTING ON THE FINDINGS AND SENTENCE WHERE EITHER SUBSTANTIAL CLEMENCY (R. 120–121) OR IMMUNITY (PRETRIAL ADVICE, P. 14) WAS GIVEN TO AIRMAN SWARTZLANDER, A KEY WITNESS FOR THE PROSECUTION. *SEE United States v. Sierra-Albino*, 23 U.S.C. M.A. 63, 48 C.M.R. 534 (1974)?

We begin our consideration of this case with an examination of the actions taken against Airman First Class Swartzlander. Since the facts underlying the specified issue were not developed below,[1] we must depend upon the several exhibits and assertions provided by respective appellate counsel.

Swartzlander was convicted by a general court-martial convened at Tyndall Air Force Base, Florida, of larceny and seven drug-related offenses. He was sentenced to a bad-conduct discharge, confinement at hard labor for 8 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The sentence was adjudged on August 10, 1979. The court was convened by Headquarters, Aerospace Defense Command. According to the staff judge advocate's post-trial review in his case: Swartzlander after trial indicated a willingness to cooperate with law enforcement officials in identifying other military personnel involved with drugs at Tyndall Air Force Base. On August 20, 1979, the Commander-in-Chief, Aerospace Defense Command, General James E. Hill, granted Swartzlander "full immunity from future prosecution."[2] Pursuant thereto, Swartzlander "executed fifteen sworn statements identifying seventeen sellers of marihuana and chemical drugs as well as thirty-two users." In addition, Swartzlander "encouraged another airman to cooperate with authorities," and the latter "provided eighteen sworn statements which corroborated information given by . . . [Swartzlander] as to forty-two persons, and identified eleven others." The review stated that through the efforts of the two informers, "five to seven persons" would probably "be tried by general court-martial and ten to twelve others" would "probably be tried by special court-martial from the Civil Engineering Squadron alone." Swartzlander also "provided information concerning . . . [the] smuggling [of] marihuana to the prisoners in the confinement facility" which led to the courts-martial and other punishment of a significant number of security policemen.

At some time during this period after the grant of immunity by General Hill, the Aerospace Defense Command ceased to exercise general court-martial authority over Tyndall Air Force Base, and this function was assumed by Ninth Air Force, Shaw Air Force Base, South Carolina. Part of the assumption of this authority involved the review and action of Swartzlander's case.

In the review of the Ninth Air Force Staff Judge Advocate, the reviewer considered the "quantity and quality of the information provided by Airman Swartzlander," the "unanimity of the clemency recommendations," and "the sentence received by another airman in a closely related case," and determined that sentence amelioration was required. He recommended that the term of the sentence to confinement at hard labor be reduced to 3 years. For reasons unknown to us, the Commander, Ninth Air Force, Lieutenant General Braswell, on November 14, 1979, reduced the period of confinement at hard labor to 2 years but otherwise approved the sentence.

One of the persons identified by Swartzlander was the accused. Charges were preferred against the accused on March 28,

1. Since the issue was not raised by trial defense counsel in his response to the review of the staff judge advocate, there is a question of waiver under the mandate of *United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975). However, since the matter was ignored subsequent to the pretrial advice, we are reluctant to impose what might be an unknowing waiver. *See United States v. Lassiter*, 7 M.J. 544, 545 (A.F. C.M.R.1978) (dissenting opinion).

2. According to appellate government counsel, the grant stated:

1. You are hereby granted immunity from prosecution for any and all offenses in which you may have been involved to the extent that the evidence of such offense or offenses is provided by you. Any statement, oral or written, or testimony you may give pursuant to this grant of immunity will not be used in any future prosecution against you. This grant of immunity will not preclude the use of evidence already possessed by the Government.

2. Pursuant to the immunity hereby granted you are required to provide full and truthful information concerning all drug activities on or near Tyndall AFB.

1980, as noted above. The drug offenses were alleged to have occurred during the calendar year 1979. On April 22, 1980, Airman Swartzlander testified at an Article 32, UCMJ, 10 U.S.C. § 832, investigation into these charges. The report of the investigation also included several written statements made by Swartzlander in September and October, 1979. The charges against the accused were referred to trial by general court-martial on May 30, 1980, by General Braswell[3] and the trial was conducted thereafter. The post-trial review of the staff judge advocate, dated August 20, 1980, discussed Swartzlander's prior drug involvement which was brought out on cross-examination but made no mention of any immunity or clemency extended to Swartzlander. In his response to the review, the trial defense counsel challenged the credibility of the prosecution witnesses, including Swartzlander, and the reviewer also responded in the addendum to the review. However, no mention was made of either immunity or clemency.[4] General Braswell took action on the accused's case on September 12, 1980, approving the findings and sentence.

It is clear from the information now available to us that it was General Hill and not General Braswell who granted post-trial immunity to Swartzlander and, hence, that part of the specified issue is factually eliminated. *United States v. Lochausen,* 8 M.J. 262 (C.M.A.1980). As we said there:

> The reviewing authority who approved the findings and sentence of the court-martial was not the same officer who was in command when the agreement was

made and when the charges were referred to trial.

Thus, we conclude that the relationship ... between [the officer extending immunity]'s actions and ... [the general court-martial convening authority]'s responsibilities, as a successor commander, is so attenuated as to preclude any reasonable expectation that the general's judgment as to the credibility of the witness was influenced by ... [the officer extending immunity]'s action.

8 M.J. at 264.

■ That leaves us to determine whether General Braswell's action reducing the adjudged sentence in Swartzlander's case precluded him from taking action against the accused. In *United States v. Sierra-Albino,* 23 U.S.C.M.A. 63, 65, 48 C.M.R. 534, 536 (1974), we concluded:

> It is well-settled that the convening authority may not involve himself in granting immunity or clemency to a Government witness and thereafter review or act upon the case.... The reason for the disqualification is that such action by a convening authority renders his impartiality suspect with reference to weighing the testimony of the witness to whom he granted immunity or clemency. (Citations omitted.)

The rationale for this holding is that it would be "asking too much of [the convening authority] to determine the weight to be given [the] witness's testimony since he granted the witness immunity in order to obtain his testimony." *United States v. White,* 10 U.S.C.M.A. 63, 64, 27 C.M.R. 137, 138 (1958);[5] *see United States v. James,* 1

---

**3.** In the pretrial advice the staff judge advocate advised the convening authority:

Airman Basic Swartzlander, Airman Basic Holl, and Airman Basic Carson have previously been convicted for their drug involvement. Swartzlander was tried and convicted by a general court-martial on 10 August 1979. Holl was tried and convicted by special court-martial on 5 December 1979. Carson was tried and convicted by special court-martial on 20 December 1979. Airman First Class Akers and Airman Honeycutt were punished pursuant to Article 15. As noted

above, Swartzlander and Akers have been granted immunity.

All of those matters may be brought out during trial with a view toward diminishing the credibility of the witnesses. For the most part, the witnesses herein are corroborated by one another. I believe there will be little adverse impact resulting from an impeachment attempt.

**4.** *See* n.1, *supra.*

**5.** Judge Latimer's dissent noted some of the *factual* weaknesses of the majority decision. He found that disqualifying the convening au-

M.J. 487 (A.F.C.M.R.1975), *aff'd.*, 23 U.S.C.
M.A. 714, 50 C.M.R. 920 (1975). The doc-
trine is well established, and, whatever its
correctness as a matter of fact in a given
instance, it does avoid an appearance of evil
and, consequently, eliminates certain poten-
tial appellate issues. *United States v.
White, supra,* citing *United States v. Hill,* 6
U.S.C.M.A. 599, 20 C.M.R. 315 (1956). How-
ever that may be, there must be some direct
unattenuated causal relationship between
the grant of clemency or immunity and the
subsequent action by the convening authori-
ty. *United States v. Lochausen, supra.*
Here the clemency awarded to Swartzlan-
der was after his trial and conviction and
was given for three reasons: first, the qual-
ity and quantity of information he provided
about the drug scene at Tyndall AFB;
second, the "unanimity of the clemency rec-
ommendations"; and third, comparison of
his sentence with that adjudged against
another airman in a closely related case.

Action in the Swartzlander case was taken
nearly four months prior to charges being
referred against the accused. Further,
Swartzlander was not the only or essential
witness against the accused. Hence, we
find no *quid pro quo* in the awarding of
clemency related to Swartzlander's testify-
ing against the accused. The relationship
between General Braswell's clemency action
and Swartzlander's testimony is so attenu-
ated "as to preclude any reasonable expec-
tation that the general's judgment as to the
credibility of . . . [Swartzlander] was influ-
enced" by his earlier action. *United States
v. Lochausen* and *United States v. Sierra-
Albino,* both *supra.*

The decision of the United States Air
Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge
FLETCHER concur.

---

thority resulted in delays and that the selection
of a substitute convening authority removed
the individualized and personalized review by
the commander exercising authority over the
accused. He challenged the proposition that
granting immunity should disqualify the con-
vening authority as being against the intent of
Congress. "Either Congress has been lax in
permitting officers to operate in conflicting ar-
eas or it concluded those occupying positions

of trust had the capacity to perform honestly
their statutory functions in both fields. . . .
Surely, by exercising the power to grant immu-
nity, the respective bodies, courts, and commit-
tees are not bound to accept the testimony of
the witnesses. Removing the bar [of prosecu-
tion] is a form of compulsion on the witness to
take the stand, but it is not a stamp of verity on
his testimony." 10 U.S.C.M.A. 65, 66, 27
C.M.R. 139, 140 (1958).