UNITED STATES, Appellee,

v.

Steve A. WEBSTER, Corporal, U.S. Marine Corps, Appellant.

No. 29,800.

U. S. Court of Military Appeals.

Nov. 14, 1975.

---

*Lieutenant Commander Jeffrey H. Bogart*, JAGC, USN, and *Lieutenant Alan E. Sherman*, JAGC, USNR, were on the pleadings for Appellant, Accused.

*Lieutenant Colonel P. N. Kress*, USMC, and *First Lieutenant Ronald J. Waicukauski*, USMCR, were on the pleadings for Appellee, United States.

## OPINION OF THE COURT

COOK, Judge:

A military judge sitting as a general court-martial convicted the accused of separate specifications of wrongful possession and sale of marihuana at the Marine Corps Air Station, Cherry Point, North Carolina. The conviction having been affirmed by the U.S. Navy Court of Military Review, we granted the accused's petition for review to consider two issues relating to a grant of immunity to a key Government witness.

The accused's first assignment of error, predicated upon inferences from the record, was to the effect that "information relative" to the grant of immunity was "withheld from the defense prior to and during" trial; the relief sought was remand of the case for a special hearing before a military judge to determine the facts. *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). Responding to the assignment, the Government obtained affidavits from the accused's detailed and individual military counsel as to the extent of their knowledge of the grant; these were filed by leave of the Court. *See United States v. Maxfield*, 20 U.S.C.M.A. 496, 43 C.M.R. 336 (1971).

Private O'Sullivan was the witness who was given the grant of immunity. In his

affidavit, the detailed defense counsel avers that he learned about Private O'Sullivan "shortly after . . . [he] was detailed" to the case and he interviewed him "a few days prior" to the trial, which began on April 12, 1974. Individual defense counsel fixed the date of the interview as April 10. In identical language, both represent that O'Sullivan "could not or would not explain . . . why he was to be given immunity." On the morning of trial, O'Sullivan asked the individual defense counsel about the "meaning and effect" of a grant of immunity; he was referred to the trial counsel. Although the time is not specified in either affidavit, but apparently after O'Sullivan was referred to the trial counsel, defense counsel "quer[ied]" the trial counsel about the grant of immunity. Again, using identical language, both counsel indicate that the trial counsel disclosed O'Sullivan had been granted immunity on the "date of referral by the Commanding General," but he "refused to state the reason therefor." [1]

The reason for the grant of immunity to O'Sullivan appears in the staff judge advocate's pretrial advice to the convening authority. In their respective affidavits, trial defense counsel admit they never asked to see the pretrial advice, but they imply they did not do so because the advice was "considered to be a confidential communication" between the staff judge advocate and the convening authority, and was not, "as a matter of course," made available to defense counsel. In part of their argument on the issue, appellate defense counsel invite our attention to the advice. The pertinent part is as follows:

> The informant is Private Larry V. O'SULLIVAN, U.S. Marine Corps, an acquaintance of the accused during the past year who has, on occasion, and in particular on the evening prior to the alleged sale, smoked marijuana with the accused. Private O'SULLIVAN has a Special Court-Martial conviction for possession of marijuana. He received an undesirable discharge for frequent involvement on 3 April 1974. He will be separated no later than 13 April 1974. Private O'SULLIVAN is an uncommunicative and reluctant witness who realizes that the testimony needed from him will necessarily incriminate himself. He also believes that his testimony will expose himself to physical danger from the accused and the accused's friends. It is plain that he cannot be made to testify, because of his right against self-incrimination, without a grant of immunity from the prosecution for those occasions when the witness used marijuana with the accused.

At trial, no mention was made of the grant of immunity at any time during O'Sullivan's testimony. In their affidavits, trial defense counsel represent that O'Sullivan was not questioned about the grant because they were "reluctant to enter into areas of O'Sullivan's misconduct which might have also reflected upon" the accused. There was, however, considerable other evidence introduced to impeach O'Sullivan. Included was evidence of previous conviction; evidence as to O'Sullivan's personal motives; a psychiatric report indicating O'Sullivan had been diagnosed as an "inadequate personality with delusions of grandure [sic]" and "poor judgment"; and stipulated testimony by two CID agents indicating that when O'Sullivan was in Ryka, Okinawa, in early 1972, he had acted as an informant for them, but they had terminated the arrangement because they came to suspect that he was " 'setting up' or entrapping people not previously suspected by CID to be involved with drugs."

Government counsel maintain that the concession by both of accused's trial defense counsel that they knew, before trial, of the grant of immunity obviates any need for a special hearing for the purpose propounded

---

1. The charges were referred to trial on April 5. This presents an apparent discrepancy between the date indicated on the document evidencing the grant of immunity, April 9, and the time of the grant as represented by trial counsel. However, appellate defense counsel make no point of the difference, apparently because an affidavit by the trial counsel submitted to the Court of Military Review indicates that the commanding general approved the grant on April 5, but the writing had to be redrafted and the redraft was on April 9.

in the first assignment of error. *United States v. Maxfield, supra.* Appellate defense counsel insist that the issue is still viable because the affidavits do not eliminate "the underlying question" of whether the accused was deprived of due process. As defense counsel were informed before trial of the fact of a grant of immunity to O'Sullivan, the only possible basis for the present contention of a denial of due process is that the Government refused to reveal the "reason" for the grant, although demanded by the defense.

It is a basic principle that, upon request, the Government must disclose to the defense material evidence favorable to the accused. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *cf. Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). Included within the obligation is disclosure of evidence affecting the credibility of a Government witness. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). As a grant of immunity is a powerful circumstance affecting credibility, the Government must disclose to the defense the fact that a Government witness is to testify under an assurance of immunity. In the Federal civilian courts, it is not clear when the disclosure must be made.

In *United States v. Gerard,* 491 F.2d 1300 (9th Cir. 1974), the court accepted, for purposes of the case, the Government's argument that disclosure was not required in advance of trial. Certainly, in some situations, cogent reasons justify that conclusion. One situation, for example, is when there is reasonable ground to believe that serious injury or death might be inflicted upon a witness if it were known in advance that he was to testify against the defendant. In that instance, disclosure might properly be postponed to a time as near to the actual appearance of the witness at trial as would be consistent with the defendant's right to prepare his defense against the witness' testimony.[2] However, when such danger is not apprehended, no persuasive reason suggests itself and the Government has tendered none to refuse disclosure of a grant beyond the time the Government must disclose the names of its witnesses.

In civilian criminal practice, the Government is not required to disclose the names of its witnesses in advance of trial.[3] In the military, the names of prospective Government witnesses must be endorsed on the charge sheet,[4] and, in time of peace, the charge sheet must be served on accused in advance of trial. In a general court-martial, the accused cannot be tried within 5 days of the service of charges against him over his objection; nor can he be brought to trial by special court-martial within 3 days of the service of charges. Article 35, Uniform Code of Military Justice, 10 U.S.C. § 835.[5] Appropriately, therefore, the Government can simultaneously with service of the charge sheet note that one or more of its prospective witnesses will testify under a grant of immunity. Disclosure at that time would accord the defense sufficient opportunity to investigate, more intensely, the credibility of the affected witnesses.

We noted earlier that appellate defense counsel have not particularized the alleged discrepancy in the notice of the grant of immunity given defense counsel prior to

---

2. *See* Hearings on Proposed Amendments to Federal Rules of Criminal Procedure, Before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 93d Cong., 2d Sess. (1974).

3. *See* Fed.R.Crim.P. 16; *United States v. Payseur,* 501 F.2d 966, 972 (9th Cir. 1974); *United States v. Quinn,* 364 F.Supp. 432 (N.D.Ga. 1973).

4. Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 29d and Appendix 5.

5. Neither the Uniform Code of Military Justice nor the MCM expressly provides for expiration of a specified period of time between service of the charge sheet and trial by a summary court-martial. However, the Manual's provisions regarding the responsibilities of the officer constituting the summary court indicate that he can properly apprise the accused, or his counsel, if he has one, in advance of trial, of Government witnesses expected to testify under grants of immunity. *See* MCM, paragraphs 44h and 79.

trial. A generous reading of their argument suggests that they perceive the trial counsel's refusal to disclose the "reason" for the grant as prejudicial to the accused. Apparently, the prejudice lies in the fact that, had trial defense counsel, in the language of the affidavits before us, been "aware of the reason" for O'Sullivan's immunity, they might have questioned him "more closely at trial in that regard." If this is the intention of the argument, it is difficult to see how the accused could have benefited from inquiry into the reason for the grant.

In civilian practice, a grant of immunity is intended to extinguish the individual's constitutional right to refuse to testify on the ground of self-incrimination; it is, therefore, the means of compelling testimony from a witness who would otherwise assert the right to remain silent. *See Murphy v. Waterfront Comm'n*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In military practice, the grant has the same purpose, but it can also embrace aspects of a pardon for offenses other than those about which the individual is expected to testify against the accused. *United States v. Kirsch*, 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964). Viewed as a means to compel testimony from an uncooperative witness, the reason for a grant of immunity is inherent in the grant. It is inconceivable that lawyers, especially ones as well prepared to impeach O'Sullivan as were accused's counsel, would not infer from the fact of the grant to O'Sullivan that it resulted from his expressed reluctance or refusal to testify because he did not want to incriminate himself. That indeed is the reason O'Sullivan was given a grant of immunity.

According to the staff judge advocate's pretrial advice, despite O'Sullivan's initiation of the chain of evidence that led to the charges against the accused, O'Sullivan had become an "uncommunicative and reluctant witness." O'Sullivan attributed his position to two factors: (1) his realization that he might incriminate himself by his testimony;

and (2) his belief that he would "expose himself to physical danger from the accused and the accused's friends." That O'Sullivan faced a threat of personal injury from the accused might be untrue in fact, but disclosure of his belief at trial does not impress us as likely to diminish his credibility. Aside from that, the reason for the grant of immunity was O'Sullivan's reluctance to testify.

■ In principle, an accused has no right to disclosure of the reasons deemed sufficient by the Government to justify a grant of immunity to obtain the testimony of the witness. In the Federal civilian practice, a court has no authority to review the underlying reasons for the Government's decision to grant immunity to a witness.[6] In the military, a convening authority's right to grant immunity rests upon various powers conferred upon him by the UCMJ and the Manual for Courts-Martial. Perhaps, more than the applicable civilian statute, these provisions emphasize the exclusivity of the right. In them, we discern no greater authority for a court-martial to inquire into the reasons for a grant than the Federal civilian courts have to make such inquiry. Nor do we believe such inquiry is open to the accused. The reasons that prompt a witness to refuse to testify may bear upon his credibility, but the reasons that prompt the Government to conclude that a grant of immunity to the witness is appropriate are irrelevant to his credibility; in fact, the witness may not even know of any reason other than his assertion of the right to remain silent. We conclude, therefore, that the refusal of the trial counsel to disclose the Government's reasons for the grant of immunity did not deny the accused any right to which he was entitled. As to the refusal to disclose O'Sullivan's reasons, as he made them known to the Government, that refusal was not prejudicial.

To say that the Government's obligation to disclose a grant of immunity does not include a statement of its reason for the

---

6. *See* H.R.Rep.No. 91–1549, 91st Cong., 2d Sess. 42–43 (1970), U.S.Code Cong. & Admin. News 1970, p. 4007.

grant does not entirely dispose of the matter. Although the defense argument is addressed to the "reason" for the grant, there is a tangential suggestion that its complaint extends to the failure to disclose the *terms* of the grant.

■ Government counsel contend that the requirements of due process do not demand advance disclosure of the "details" of a grant of immunity. The difficulty with this argument is that it does not take account of the consequences of certain types of promises of leniency to a witness. Recently, this Court observed that a denial of due process results from the use of testimony obtained under a grant of immunity which so "irresistably induces falsification" as to be "virtually indistinguishable from the presentation of testimony which the Government specifically knows is false." *United States v. Garcia,* 23 U.S.C.M.A. 403, 407, 50 C.M.R. 285, 289, 1 M.J. 26, 30 (1975). Moreover, the terms of a promise of immunity may be differently recounted or understood by the witness and, thereby, provide an even more formidable basis for challenge to his credibility. *United States v. Gerard, supra* at pages 1303–04. Consequently, if the purpose of disclosure is to be fully served, disclosure must include the terms of the grant.

■ To minimize collateral issues of the kind mentioned, we direct that 30 days after promulgation of this opinion, no prosecution witness who has received a grant of immunity or promise of leniency may testify in any court-martial unless the grant of immunity or promise of leniency has been reduced to writing and served on the accused within a reasonable time before the witness testifies. The failure to comply with this rule can be presented by the accused to the court-martial to which the charges have been referred to trial, and the trial judge, the president of a special court-martial convened without a judge, or the summary court-martial, as the case may be,[7] may grant a continuance until such time as is necessary to obtain compliance, prohibit testimony by the person to whom the grant of immunity has been given, or enter such other order as may be required. *See* Fed.R.Crim.P. 16(g).

■ As to this case, it appears from the affidavits before us that defense counsel did not know, and were not informed, of the terms of the grant of immunity until after the convening authority's action. The terms of the grant[8] were only what could reasonably be anticipated to overcome the recipient's assertion of the right not to incriminate himself in regard to his own misconduct, if he were to testify as to the charges against the accused. Several days before trial, defense counsel knew O'Sullivan had furnished the information that led to the wrongful sale charge against the accused and provided the predicate for the search of accused's quarters that led to discovery of the marihuana, which became the subject of the possession charge. Almost unavoidably, such information leads to the inference that the grant had been issued to O'Sullivan because he had, for some reason, become unwilling to testify. That defense counsel drew this inference is implicit in their admission that they restrained their cross-examination of O'Sullivan because of lack of awareness of the "reason" for the grant, not because of ignorance of its terms. We are convinced, therefore, that defense counsel's failure to demand disclosure of the terms of the grant or to

---

7. *See* Article 51, UCMJ, 10 U.S.C. § 851.

8. In material part, the grant provides as follows:

In consideration of your testimony as a witness for the Government in the foregoing matter, you are hereby granted immunity from prosecution for any offense or offenses arising out of the matters therein involved concerning which you may be required to testify under oath.

It is understood that this grant of immunity from prosecution is effective only upon the condition that you actually testify as a witness for the Government. It is further understood that this grant of immunity from prosecution extends only to the offense or offenses in which you were implicated in the matter herein set forth and concerning which you testify under oath.

inquire into them during their cross-examination of O'Sullivan precludes reversal of the findings of guilty on the ground the terms were not revealed to them before or at trial.

In his second assignment of error, the accused contends he was prejudiced by the failure of the staff judge advocate to discuss O'Sullivan's grant of immunity in his post-trial advice to the convening authority. Opposing the contention, Government counsel present two arguments. First, they contend the staff judge advocate is obligated to include in the review only evidence before the trial court; as the grant of immunity was not mentioned at trial, it was, they argue, properly omitted from the advice. MCM, paragraph 85*b*. Support for this position is perceived in the following extract from this Court's opinion in *United States v. Martin*, 9 U.S.C.M.A. 84, 85–86, 25 C.M.R. 346, 347–48 (1958):

> The precise question for our consideration, therefore, is whether there is imposed upon a staff judge advocate the affirmative duty to consider in the review and invite the convening authority's attention to matters derived from sources outside the record of trial which are favorable to an accused. We cannot conceive of the imposition of such a duty. It is entirely a matter within the discretion of the staff judge advocate whether or not to include in the review a discussion of matters obtained from sources outside the record which may be considered favorable to an accused. To hold otherwise, would be to impose an insufferable burden upon a staff judge advocate to cause an investigation to be conducted at the conclusion of every court-martial for the purpose of uncovering matters—not previously presented at trial before the court-martial—which may conceivably be beneficial to the accused. We are not prepared to sanction principles which must lead to such results.

■ *Martin* goes beyond the position set out in the quotation. The Court concluded with the caution that when a matter not mentioned in the transcript of the trial but known to the staff judge advocate is of such nature "that to deprive the convening authority of the benefit of . . . [it] might possibly result in a miscarriage of justice," the staff judge advocate "will be expected" to bring that matter to the convening authority's attention. *Id.* at 87, 25 C.M.R. at 349. Testimony by a key Government witness under a grant of immunity impresses us as one of the matters within the special class contemplated in *Martin*.

As the convening authority cannot go outside the record for evidence to bolster the Government's case, in most instances, he must evaluate the credibility of a witness on the trial transcript. However, the convening authority can consider matters from any source that might incline him to *disapprove* findings of guilty or the sentence. Illustratively, if after trial, a key Government witness admits to a friend that he had lied in his testimony, and the admission comes to the attention of the staff judge advocate, the staff judge advocate could, alternatively, apprise the defense of the matter as the basis for a formal defense application to the convening authority for a rehearing, or he could, on his own initiative, bring the matter to the attention of the convening authority, with a recommendation for a rehearing for the accused. Of course, discovery that the witness testified under a grant of immunity is a very long way from a confession by the witness that he lied in his testimony, but the grant is a powerful factor bearing upon his credibility.

Whether right or wrong, defense counsel's decision not to inquire into the grant of immunity at trial does not conclude the matter as regards the convening authority. His evaluation of O'Sullivan's credibility is not limited to factors considered by the court-martial. Instead, he can disbelieve O'Sullivan in his own discretion. Article 64, UCMJ, 10 U.S.C. § 864. The exercise of discretion in favor of the accused can be induced by matter outside the record of trial. Consequently, if the convening authority is to be in a position to exercise the full panoply of his powers, he must be informed, as *Martin* indicates, of matters that

are very likely to influence him in the exercise of his discretion and to avoid a miscarriage of justice. That a witness testified under a grant of immunity falls into that category.

Government counsel contend that even if the post-trial review was inadequate, the absence of discussion of O'Sullivan's grant of immunity was not prejudicial to the accused. We need not recount the whole of the argument. The contention has two parts. The first is to the effect that because of other evidence of impeachment, the "value" of the grant of immunity for impeachment was de minimis; the second is that O'Sullivan's testimony is so strongly corroborated by independent evidence that the grant of immunity could not reasonably influence the convening authority's evaluation of O'Sullivan's credibility.

█ As to the first part of the Government's argument, we are not persuaded that the other impeaching matter, which we detailed earlier, was so compelling as to gain nothing from the grant of immunity. In *United States v. Nelson,* 23 U.S.C.M.A. 258, 49 C.M.R. 433 (1975), we took note of the primacy of a grant of immunity in the catalog of impeachment evidence. There, as here, the Government's witness admitted his own involvement with drugs and a previous role as a police informer, and there, as here, there was testimony by other witnesses indicating they would not believe the witness involved. Unlike here, however, the witness admitted at trial that he was testifying under a promise of immunity. That issue was omitted by the staff judge advocate from his post-trial advice. We held that the omission constituted prejudicial error. Considering the scope of the convening authority's discretion to set aside findings of guilty, we cannot conclude that this "important factor" in evaluation of O'Sullivan's credibility had so little potential to influence the convening authority that we can safely disregard the failure to bring it to his attention in his review of the accused's case. *Id.* at 262, 49 C.M.R. at 437.

The decision of the Court of Military Review is reversed, and the action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to another competent general court-martial authority for further proceedings consistent with this opinion.

Chief Judge FLETCHER and Senior Judge FERGUSON concur.