UNITED STATES

v.

Andy SAYLOR, 403 72 9205, Sergeant
(E–5), U. S. Marine Corps.

NCM 78 0500.

U. S. Navy Court of Military Review.

Sentence Adjudged 14 June 1977.

Decided 14 Nov. 1978.

LT Michael F. Fink, JAGC, USNR, Appellate Defense Counsel.

LT Sander Mednick, JAGC, USNR, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GLADIS and MICHEL, JJ.

MICHEL, Judge:

In accordance with his pleas, appellant was found guilty at a special court-martial bench trial of a single violation of Article 86, UCMJ, 10 U.S.C. § 886 and, contrary to his pleas, of wrongfully disposing of two quantities of Government-owned ammunition and larceny of that same ammunition, in violation of Articles 108 and 121, UCMJ, 10 U.S.C. §§ 908 and 921 respectively. The sentence, as approved below, extends to a bad-conduct discharge and lesser associated penalties.

Appellate defense counsel has assigned several errors before this Court. Although we do not address each error alleged, our disposition of the case effectively erases any perceived prejudice to this appellant. What we believe to be presented here is the interface between grants of immunity and charge relief as those entities relate to the credibility of an accused who testifies at the trial of an alleged co-actor.

Subsequent to accepting the appellant's pleas of guilty to the charged Article 86 offense, the Government proceeded with its proof of the three allegations of wrongful conduct within the purview of Articles 108 and 121. Simply put, the Government's position was that appellant had helped himself to a quantity of rifle and pistol range ammunition on several occasions and, thereafter, had transferred this ammunition to Lance Corporal D, who, in turn, delivered the ammunition to a third party who paid for the stolen goods, with such remuneration ultimately accruing in whole to appellant.

As might be expected, the Government's primary witness linking appellant to the criminal conduct at issue was Lance Corporal D. At the initial Article 39a, UCMJ,

session conducted on 6 May 1977, the trial defense counsel moved the court to direct that the prosecution furnish to the defense ". . . a list of intended witnesses that they intend to call in their case-in-chief," as well as ". . . all statements by one Lance Corporal [D]." The reason for the latter request was that Lance Corporal D was tried in a prior proceeding involving the same matter, his conviction was not final, and when trial defense counsel attempted to interview Lance Corporal D, trial defense counsel encountered a situation wherein this prospective witness refused, on Article 31, 10 U.S.C. § 831 grounds, to answer any questions save that relating to his name. After assurances that both requests would be complied with by the Government, the military judge continued the case until 17 May 1977.

On the appointed date, another Article 39 a session was conducted, at the outset of which opinions of counsel differed as to whether or not the defense's witness request had been fully complied with. This prompted the military judge to grant a 10-minute recess to allow counsel to satisfactorily resolve the matter; thereafter, the military judge approved the accused's request for trial before military judge alone and conducted an inquiry into the providency of the appellant's guilty pleas to the Article 86 offense. The military judge found appellant's guilty pleas to have been providently entered and accepted them; trial on the merits concerning the other allegations then began.

The Government's first witness was Lance Corporal D, who gave testimony ostensibly in accordance with that expected by the prosecution: he detailed his own involvement in the criminal venture concerning the Government ammunition and, in due course, implicated the appellant as the primary malefactor. At the close of his direct testimony, the prosecution sought to introduce into evidence four photographs allegedly depicting the fruit of the crime.[1]

---

1. While we feel that the trial judge's ultimate failure to sustain trial defense counsel's objec-

tion to the admission of these photographs on the ground that a chain of custody had not

After timely objection by the trial defense counsel and argument by both advocates, the military judge reserved his ruling on the admissibility of the photographs. Thus, the stage was set for cross-examination.

After extensive questioning of Lance Corporal D concerning various facets of his testimony which were damaging to appellant, trial defense counsel sought to elicit from the witness an admission that Lance Corporal D's pretrial agreement contained a provision for charge relief respecting an allegation of larceny of the same ammunition currently at issue[2] in return for the guilty pleas of Lance Corporal D to related Articles 108 and 134, 10 U.S.C. § 934 of-

fenses.[3] At this juncture, as can be discerned from the record, the military judge interrupted with a question about relevancy, the trial counsel effectively followed his lead, trial defense counsel, faced with united opposition, chose to retreat, and the military judge effectively sustained his own objection thereby precluding this prong of cross-examination inquiry. To compound the trial defense counsel's problem, the witness then claimed not to remember whether or not anyone had approached him about testifying against appellant at the latter's trial. Faced with this combined set of circumstances, trial defense counsel asked for a 4-minute recess ". . . to obtain one

---

been established was error, *see United States v. Nault*, 4 M.J. 318 (C.M.A.1978), we choose not to predicate our holding upon this narrow ground.

2. The following extract from the record of trial is most illustrative:

"DC: Q. Lance Corporal [D], let's go forward in time to the time you had your court-martial. Do you recall the charges against you?
WIT: A. Yes, sir, I do.
Q. What were those charges?
A. Receipt and sale, sir.
Q. Wasn't there also a charge of larceny?
A. Yes, sir.
Q. And that was of military ammunition?
A. Yes, sir.
Q. In fact, there were three charges against you, weren't there? Charge I was a violation of Article 121, and you had two Specifications under there, of theft of 1,700 rounds of 5.56 ammunition, and Specification 2 was a larceny of .45 caliber ammunition, 4,000 rounds.
A. Yes, sir, I believe so.
Q. Would it help you if I showed you a copy from your record of trial, or is that what you were charged with with Charge I?
A. I believe so, sir.
Q. Okay. And Charge II has three Specifications thereunder, a violation of Article 108, didn't it? A transfer of military property—ammunition, without authority?
A. I believe so, sir.
Q. And Charge III was Article 134, and that was the receipt—two Specifications of receipt of stolen property, the .45 caliber ammunition and 5.56?
A. Yes, sir.
Q. And isn't it a fact that your pretrial agreement called for the Charge I, the two Specifications of larceny, Article 121, to be withdrawn prior to trial upon your provident plea to Charge II and Charge III?

A. Do you want to explain that, sir?
Q. Your pretrial agreement—I want you to think about that. It called for the withdrawal of the Charge I and II; in other words, the Charge of larceny would be dropped against you if you pled guilty—
MJ: What's the relevancy?
DC: Your Honor, I think the relevancy is that it goes to—for impeachment purposes, and it goes as to motive, possibly, to fabricate Charge—Article 121 is a much more serious offense, as far as the permissible punishment, than the 134 Charge, the receipt of stolen property, and it goes to a motive for—testimony at the trial here today.
MJ: What's the government's position on this?
TC: The government would argue that there's no relevancy at all to it.
MJ: Well, I've already stated that. Now, what's the government's position—why?
TC: Because—We're talking about things that—decisions which were made by other people, the defense counsel, of the witness, and the trial counsel on the case of the witness, and the defense counsel here is trying to draw inferences from the dropping of the Charge that doesn't seem can be drawn, because there are many many other reasons for dropping it and I don't—The government does not see how it bears on the credibility of this witness at all, that that Charge was dropped concerning Lance Corporal [D]. It doesn't have any relevancy to his credibility, Your Honor.
MJ: Do you have anything more to say on it?
DC: No, Your Honor." (R. 47, 48)

3. It appears that, at his own special court-martial, Lance Corporal D was charged with both the wrongful disposition by transfer of the stolen ammunition and receipt of this same property.

item that I do not have before me that I would like to obtain." The recess was granted. Owing to the admission of Lance Corporal D's wife to the hospital and his presence being required at her side, cross-examination of Lance Corporal D did not resume until 23 days later.

At the outset of the next session of court, it was apparent that trial defense counsel was having difficulty ascertaining the precise point at which the previous portion of the cross-examination terminated. In an effort to pick up the thread of previous questioning, he sought to establish an inconsistency between the witness' in-court testimony and this witness' responses during the Care[4] inquiry in his own trial.[5] Again, the trial defense counsel, stymied by the trial

4. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

5. Trial defense counsel sought to accomplish this by showing Lance Corporal D the transcript of his own trial in order to refresh the latter's recollection. In this respect such a procedure would have been proper although in the instant case the military judge erroneously did not allow it. *See* para. 149c (1)(b), MCM, 1969 (Rev.). We note that were there an authorized procedure that would require plea inquiries to be conducted after an accused is sworn to tell the truth, as is the practice in federal district courts (*see, e. g., Bryan v. United States*, 492 F.2d 775, 781 (5th Cir. 1974); *United States v. Aleman*, 417 F.Supp. 117, 126–128 (S.D.Tex. 1976); *West's Federal Forms*, District Courts, Criminal, § 7283.5 [Supp.1978]), memory of responses given at that type of proceeding would improve under the spectre of a possible perjury prosecution. *See* Article 131, UCMJ; para. 210, MCM, 1969 (Rev.).

6. The record is clear that trial defense counsel felt that the military judge had foreclosed inquiry into these areas. Again, an extract from the record of trial is illuminating:

"TC: I now hand this document to the military judge and request that it be appended to the record of trial.
[The document was handed to the military judge.]
MJ: Any objection by the defense?
DC: Yes, there is, one objection, Your Honor, and that is, that as Your Honor well knows, that if you look at that, that document was handed to the defense counsel after Lance Corporal [D] had made the bulk of his cross-examination testimony and I was not aware—I was not aware of any such grant of immunity prior to that. I would note that objection.

judge's adverse intervention, chose not to pursue this line of inquiry, asked five more perfunctory questions, and ended his cross-examination. Lost in the confusion, undoubtedly caused by the hiatus in the cross-examination of this crucial Government witness, was the matter of possible charge relief granted to this witness in his own trial by way of a pretrial agreement provision and the matter of the witness' motivation to testify in appellant's trial. Both areas were broached by trial defense counsel with the military judge *after* the latter had pronounced sentence on appellant. Again, the military judge failed to perceive the significance of these two interrelated issues.[6]

MJ: The government was not—the defense was not made aware of the grant of immunity until the government's witness?
TC: Your Honor, until the middle of the cross-examination—
DC: Your Honor—
TC: —until that date. The government would cite the case of the *United States v. Webster*. This is found at—it's a COMA case, 51 CMR 76, and it's a 1975 case, and it states that the remedy in this situation is that the trial judge may grant continuance until such time as is necessary to obtain compliance, prohibit testimony by the person to whom the grant of immunity had been given or enter such other orders as may be required, and as the judge can see, it has been three weeks since the defense counsel was served with the notice of the grant of immunity and the government will argue that he has had sufficient time to prepare cross-examination to impeach the witness who once again was called this week and at that time he could have been examined after the grant of immunity that he was provided.
DC: Your Honor, if you will remember, I believe during the examination, I was inquiring into the terms of a pretrial agreement as to afore testimony and several other areas, and believe, Your Honor, confined me on certain areas into inquiring into the terms of a pre-trial agreement and so on, at that time, and it was not in the midst of my cross-examination—98% of my cross-examination had been completed when then, after and after that was when I was given notice of that grant of immunity.
MJ: Well, this has nothing—this grant of immunity has nothing to do with the pretrial agreement.
DC: Well, Your Honor, I think it goes to the fact that I was trying to inquire into motives

In the case at bar, trial defense counsel knew that successful impeachment of the witness, Lance Corporal D, was essential to his client's case. While impeachment of any witness can be effectuated in a variety of ways (see paragraph 153, *Manual for Courts-Martial, United States, 1969* [Revised edition]), the obvious thrust of this advocate's impeachment effort was to show bias on the part of this crucial Government witness. See para. 153*b* (2)(d), MCM, 1969 (Rev.); see also n. 6, *supra*. The fact that he was severely hampered in this effort by the military judge is evident and it is this interference which we believe denied appellant his fundamental right of confrontation and cross-examination.

At trial the military judge effectively ruled that any inquiry into the terms of Lance Corporal D's pretrial agreement was irrelevant to the issues at bar.[7] However, the fact remains that Lance Corporal D had been charged originally with essentially the same criminal conduct as appellant;[8] thereafter, he entered into a pretrial agreement with the convening authority,[9] pleaded guilty to the Articles 108 and 134 allegations, was duly found guilty, and subse-

quently was issued a grant of immunity by the general court-martial convening authority.[10]

It is now well recognized that immunity such as that granted Lance Corporal D is coextensive with the privilege against self-incrimination. See, e. g., *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). As such, the grant may lawfully issue and by operation of law compel an otherwise recalcitrant witness, who is deemed to possess information essential to the Government's case, to testify at trial where that witness could, absent the grant, successfully rely on his right under the Fifth Amendment and refuse to testify on the ground that such testimony would tend to incriminate him with respect to criminal activity. *Kastigar, supra*, at 406 U.S. 453, 92 S.Ct. 1653. Apparently, this is precisely what the Government faced in this case.[11] The only plausible explanation for the ultimate execution of the grant of immunity to Lance Corporal D is that this potential witness still could be prosecuted

---

of bias, as to what type—if there were any types of deals made, what was going on, any type of biased testimony or such and I was not aware at that time, and I think it would have been relevant to that at that point in time.

MJ: Well, when you were made aware of it, why did you not bring it up again?

DC: Because I've been—the main reason was because I've been precluded that week by your ruling earlier from going into that.

MJ: My ruling was as to the pretrial agreement. The question was, 'Was there any obligation or was there any obligation to testify as pertains to the pretrial agreement?' And the answer was 'No.' Now, this is not part of the pretrial agreement, Captain [B].

DC: I was trying to—

MJ: It's a new matter that could have been raised when you've seen you had the opportunity to do so." (R. 105, 106)

7. See note 2, *supra*.

8. While Lance Corporal D's testimony reveals that he had originally been charged with violations of Articles 108, 121, and 134 respecting the stolen Government ammunition, and this is reenforced by the staff judge advocate in his review of appellant's case, there is no evidence of record which specifically indicates either the

underlying rationale for the dropping of the larceny charge against Lance Corporal D at or before his own trial or whether such action was with or without prejudice to the Government.

9. This agreement was not made a part of this record, probably as a result of the military judge's view that it was irrelevant. See note 2, *supra*.

10. The grant of immunity to Lance Corporal D, dated 6 May 1977, is included in the record before us. It grants Lance Corporal D immunity from the use and derivative use of his testimony as a Government witness in appellant's trial. Ostensibly, Lance Corporal D's trial concluded in advance of the date indicated on the face of the grant.

11. Trial counsel, in his letter request for the grant of immunity to Lance Corporal D, indicated that Lance Corporal D was charged with wrongfully receiving stolen property and wrongfully selling United States Government property, that Lance Corporal D was the Government's only witness, and that it was anticipated that Lance Corporal D would exercise his right to remain silent if called to testify.

for the larceny offense with which appellant was also charged.[12] Faced with such a prospect, a motive on the part of Lance Corporal D to falsify his testimony and thereby implicate appellant is at least latent, rendering an interrelated inquiry into the terms of both Lance Corporal D's pretrial agreement and his grant of immunity a relevant endeavor.

■ We noted earlier that the military judge precluded cross-examination of Lance Corporal D on the subject of that individual's pretrial agreement. At that juncture of trial, a recess was called. At the conclusion of the recess, Lance Corporal D was excused by the military judge, due to that witness' personal responsibilities attendant to his wife's hospitalization, and the Government proceeded with its next three witnesses. That session of trial ended at 1409 hours, 17 May 1977. Evidence of record indicates that trial defense counsel was not served with a copy of the grant of immunity to Lance Corporal D until 27 minutes later, or almost 6 hours after Lance Corporal D was called to testify as a witness for the Government. Under the circumstances of this case, we conclude that trial counsel's failure to serve a copy of the grant upon the accused prior to the commencement of Lance Corporal D's testimony constituted an error prejudicial to the appellant's substantial rights, thereby warranting a reversal of the larceny and wrongful disposal convictions in this case.[13]

After noting that a grant of immunity is a powerful circumstance affecting credibility and that, as such, the Government is required to make known to the defense the existence of such a grant, a unanimous Court in United States v. Webster, 1 M.J. 216 (C.M.A.1975) undertook to define the timing requirements of the Government's disclosure. The Court concluded that, absent a situation where there is reasonable ground to believe that serious injury or death may be inflicted upon a witness if it were known in advance that he was to testify as a Government witness, Government disclosure of the existence of a grant of immunity simultaneously with service of the charge sheet would accord the defense sufficient opportunity to investigate, more intensively, the credibility of the affected witness. Id. Thus, our judicial superiors recognized that which the military judge in the instant case failed to perceive: that effective cross-examination necessarily includes the advance knowledge that the witness is testifying under a grant of immunity, for only with this knowledge may the advocate bring into focus before the trier of fact those factors which directly bear on the witness' credibility. For that reason the Court requires that the grant of immunity or promise of leniency be reduced to writing and served on the accused within a reasonable time before the witness testifies. Id. at 221. The remedy for noncompliance, however, is another matter.

■ In the event that the prosecution fails to comply with the Webster Court's mandate, it appears that the military judge would be the one charged with the responsi-

12. We reach this conclusion by noting that had Lance Corporal D been tried on the larceny charge, irrespective of the nature of related findings, he would have not been subject to further prosecution. See Article 44a, UCMJ; para. 215b, MCM, 1969 (Rev.). Had this been the case, Lance Corporal D's reliance on the privilege would not have been well-founded. See e. g., Zicarelli v. Investigation Commission, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). See also, United States v. Yurasovich, 580 F.2d 1212 (3rd Cir. 1978).

13. In so holding, we are unable to conclude on the facts of this case that the basic error was remedied either by trial counsel's service of a copy of the grant of immunity on trial defense counsel during the protracted interval between the two portions of Lance Corporal D's cross-examination, or by the military judge's verbalization, after sentence was announced, that his knowledge as the trier of fact, prior to the time that Lance Corporal D testified, that Lance Corporal D had been given a grant of immunity would not have altered his findings regarding the larceny and wrongful disposal charges. Further, we do not consider trial defense counsel's failure to pursue the issue of the grant of immunity during the second cross-examination session as a waiver of this significant defect. See n. 6, supra.

bility of fashioning a ruling designed to protect the accused's substantial rights.[14] However, in the case at bar, the military judge was not made aware of the issue of the grant until *after* all the witnesses had testified, and appellant had been found guilty and duly sentenced.[15] Even at that point, armed with the knowledge of such a violation, the military judge concluded that any possible error was waived by trial defense counsel's failure to bring the matter to his attention prior to the resumption of Lance Corporal D's cross-examination.[16] We believe that the failure of the trial counsel to have made known to the trier of fact, here the military judge, the existence of the grant of immunity to Lance Corporal D, the key prosecution witness, *prior to* the time that that witness began his direct examination, *coupled with* the military judge's failure to allow trial defense counsel the opportunity to delve into the terms of Lance Corporal D's pretrial agreement, precluded the admission of evidence relevant to the credibility of this witness. Thus, the effective exclusion of this evidence plainly can be said to have deprived the finder of

**14.** The Court succinctly stated: "The failure to comply with this rule can be presented by the accused to the court-martial to which the charges have been referred to trial, and the trial judge . . . may grant a continuance until such time as is necessary to obtain compliance, prohibit testimony by the person to whom the grant of immunity has been given, or enter such other order as may be required. *See* Fed.R.Crim.P. 16(g)." *United States v. Webster,* 1 M.J. 216, 221 (C.M.A.1975) (footnote omitted).

**15.** The record of proceedings which followed the announcement of sentence reveals the following:

"MJ: The fact of the matter is, the government did not comply with the rules concerning immunity as published by the Court of Military Appeals in *U. S. v. Webster.*
TC: No, sir, the government did not.
MJ: Now, on Appellate Court Exhibit 2, written is the following: 'Received a copy of this document in its entirety on 17 May 1977 at 1436 hours; four pages, re: grant of immunity to Lance Corporal [D],' and there is a signature on it. Is this your signature, Captain [B]?
DC: Yes, it is.
MJ: Now, when was Lance Corporal [D] recalled to the stand: Was it on the 9th of June?
TC: It was last Friday, sir; last Friday.
MJ: The 9th of June.
TC: Yes, sir.
MJ: And at that time defense was aware of this grant of immunity.
DC: That is correct, Your Honor.
MJ: And it was not brought up at that time.
DC: It was not brought up for the reason I stated earlier that I made a mistake in my beliefs that I thought I was precluded from going into that.
MJ: The court was not aware of any grant of immunity having been given. In fact, perhaps it would have behooved the government to offer this at that time so that all parties are aware of just what exactly was going on.

The court in no way precluded any questions concerning the grant of immunity. The Court had, on its first and second sessions, indicated that the questions concerning testifying vis-a-vis the pretrial agreement had been answered, the answer to which was as follows: There was no grant of immunity in the terms of the pretrial agreement; there was no condition to testify that there was a pretrial agreement. Now, whether counsel interpret that as indicating he could not inquire into the terms of this pretrial agreement, a new piece of documentary evidence which had nothing to do with the pretrial agreement, can only be determined by the interpretation of counsel . . . ." (R. 109)

**16.** The record of trial concerning the post-sentencing proceedings is clear in this regard:

"MJ: Now, I have listened to the testimony and whether the court would have been made aware that it was testimony that was given under grant of immunity or not, would not have changed the court's ruling. The court has personally observed the witnesses, has personally observed the witnesses on direct and on cross and has weighed the evidence presented by witnesses and listened to argument and has reached its verdict. The court believes that there is no prejudicial error, that perhaps there is error, but due to the delay of the time between the 17 May delivery of the grant of immunity to defense counsel and the recalling of the witness on 9 June, the error was cured. Defense counsel had opportunity to come forward on the 9 June hearing or to request in the meantime between 17 May and 9 June an Article 39(a) session to bring this to the attention of the court. It should be noted that there was a session on the 18th of May, one day after the accused or the defense was served with this grant of immunity. I find no error of a prejudicial nature to the accused. Appellate Court Exhibit 2 will be attached to the record of trial." (R. 110)

fact of evidence which bore directly on the issue of appellant's guilt or innocence and, as such, it was an error which prejudicially affected a substantial trial right of appellant, thereby mandating reversal of the findings of guilty respecting the alleged violations of Articles 108 and 121, UCMJ. *United States v. Napier*, 20 U.S.C.M.A. 422, 43 C.M.R. 262 (1971).

Accordingly, only so much of the findings as finds the accused guilty of a single specification in violation of Article 86, UCMJ, is affirmed. The remaining findings of guilty are set aside. The record is returned to the Judge Advocate General for transmittal to the convening authority who may authorize a rehearing on the charges and specifications set aside and on the sentence, or, in the alternative, dismiss those allegations in the event a rehearing is deemed impracticable, in which case the sentence should be reassessed on the basis of the finding of guilty as to the Article 86 offense.

Senior Judge DUNBAR concurs.

GLADIS, Judge (concurring in the result):

I agree that the accused has been prejudiced by the erroneous limitation of defense cross-examination of a key prosecution witness and concur in the reversal.