UNITED STATES, Appellee,

v.

Specialist Four Franklin J. BRICKEY, SSN 281–56–7102, United States Army, Appellant.

SPCM 13754.

U. S. Army Court of Military Review.

29 Jan. 1980.

---

Charles E. Brant, Esquire, and Captain Paul T. Allen, Jr., JAGC, argued the cause for the appellant. With them on the brief were Colonel Edward S. Adamkewicz, Jr.,

JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain Joseph W. Moore, JAGC.

Major David McNeill, Jr., JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel R. R. Boller, JAGC, Major Robert B. Williams, JAGC, and Captain Dennis S. Cameron, JAGC.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

The appellant, Specialist Brickey, was tried by a special court-martial for soliciting another soldier (Private Brown) to wrongfully possess marihuana in October 1977; for wrongfully possessing and transferring (to the same Private Brown) methamphetamine on 28 January 1978; and for wrongfully possessing and selling methamphetamine on 4 February 1978. Brickey was acquitted of the solicitation charge, but was convicted of wrongfully possessing and transferring methamphetamine on 28 January 1978 in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1976). As for the alleged possession and sale on 4 February, he was convicted only of attempts in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (1976). See part III, *infra*.

Brickey's sentence to a bad-conduct discharge (no confinement or forfeitures were imposed) has been approved by the convening authority. The record is before this Court for review pursuant to Article 66(b), Uniform Code of Military Justice, 10 U.S.C. § 866(b) (1976).

Errors asserted for our consideration include (a) failure of the trial counsel to disclose evidence to the defense, (b) failure of the trial judge to assure that the accused understood his right to testify on the merits, and (c) incomplete or incorrect advice by the staff judge advocate to the convening authority in the post-trial review.[1]

### I

The appellant contends that his conviction should be reversed because certain exculpatory evidence was withheld from him by the prosecution. Relying on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, he claims that he was prejudiced by the trial counsel's failure to reveal that, shortly before the trial, Private Brown, who was the sole prosecution witness to the offenses of 28 January, had been hospitalized for a drug overdose and diagnosed as suffering from "delusions and extreme paranoia."[2]

 Appellant urges that this information, had it been disclosed to the defense, would have been useful in attacking the

---

1. In addition, Brickey's civilian trial defense counsel has asserted that the military judge erred in refusing to give a requested instruction concerning accomplice testimony (Private Brown's). Because appellate counsel (*viz.*, both assigned military counsel and retained civilian appellate counsel) had entered the case, we denied the trial defense counsel's motion to file his assignment of error as an appellate pleading. *See United States v. Palenius*, 2 M.J. 86, 93 (CMA 1977). However, we ordered the document filed with the record for our consideration pursuant to Article 38(c) of the Uniform Code of Military Justice, 10 U.S.C. § 838(c) (1976).

2. The hospitalization occurred at Fort Lewis, Washington, to which Private Brown had been transferred in the normal course of events before Brickey was brought to trial in Korea,

where the offenses occurred. The trial counsel discovered the information through a message transmitted in Criminal Investigation Command channels. She telephoned the hospital at Fort Lewis and was told that Brown already had been released and was returning to Korea to testify. In the opinion of the attending physician, Brown was lucid, not amnesic, and able to know right from wrong and to adhere to the right. It appears that Brown had been hospitalized on 8 May 1978, returned to Korea on 18 May, and remained there, attached to the staff judge advocate office, at least until 6 June, when his testimony was taken by deposition. Apparently he was returned to the United States for discharge from the Army before the trial, which was delayed until July. His deposition was read in evidence without contest as to his unavailability.

credibility of an important prosecution witness (Brown) and should have been disclosed. We agree. The duty to disclose evidence affecting the credibility of a Government witness, at least when material to either guilt or punishment, is within the obligation imposed on prosecutors by *Brady v. Maryland, supra. Marzeno v. Gengler,* 574 F.2d 730, 735 (3d Cir. 1978); *United States v. Webster,* 1 M.J. 216, 219 (CMA 1975); *United States v. Mougenel,* 6 M.J. 589, 591 (AFCMR 1978); *United States v. Brakefield,* 43 C.M.R. 828, 833 (ACMR 1971).[3]

■ Moreover, the appellant contends that the information withheld was within the scope of a request for discovery by the defense. The *Brady* disclosure requirement is no longer limited to situations in which the defense has requested the information; however, the existence and specificity of any request are material to our determination whether a rehearing is necessary because of the nondisclosure. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Librach,* 602 F.2d 165, 167 (8th Cir. 1979); *United States v. Jackson,* 579 F.2d 553, 559–60 (10th Cir. 1978); *Marzeno v. Gengler, supra,* 574 F.2d at 735–36.

■ When the specific evidence not disclosed had been requested by the defense, the conviction must be reversed if "the suppressed evidence might have affected the outcome of the trial." *United States v.*

*Agurs, supra,* 427 U.S. at 104, 96 S.Ct. at 2398. If, on the other hand, there was only a general request for all exculpatory evidence (or no request at all) reversal is required only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* at 112, 96 S.Ct. at 2402. The latter standard, we believe, applies in this case.

■ In support of his contention that there was a specific request for information of the type withheld, appellant cites an unwritten agreement reached at a meeting among counsel several months before the trial.[4] The meeting was occasioned by the departure of a former chief trial counsel and its evident purpose was to alter or clarify existing discovery practices in the jurisdiction. From the parties' differing accounts, we are inclined to the view that the agreement reached merely eliminated a local requirement that requests for witnesses and documents required to be furnished to the defense in accordance with paragraphs 44f(2), 44h, and 115 of the Manual for Courts-Martial, United States, 1969 (Revised edition), be specific and be in writing.[5] Even if we are mistaken as to the parties' understanding of the agreement, however, the most favorable interpretation that can be placed on the appellant's view of it is that it amounted only to a general request for exculpatory information and was not a specific request for the information withheld in this case. Therefore, the *Agurs* "reasonable doubt" test applies.

---

3. In deference to the trial counsel in this case and as a caution to others, we point out that neither the Army's trial procedure text nor the ABA Criminal Justice Standards explicitly recognize that evidence bearing on the credibility of a witness can be exculpatory within the purview of *Brady.* See DA Pamphlet 27–173, Military Justice: Trial Procedure, par. 19–14 (1978); ABA Criminal Justice Standards, The Prosecution Function and The Defense Function, sec. 3.11(a), Commentary at 101 (1971) (no commentary is yet available for the newly revised ABA Criminal Justice Standard 3–3.-11(a) (1979)). Indeed, the doctrine may have limits. *Compare United States v. Judon,* 567 F.2d 1289, 1293 (5th Cir. 1978), *with United States v. Martin,* 565 F.2d 362, 364 (5th Cir. 1978).

4. Apparently the attendees were counsel assigned to the Eighth Army Trial Advocacy Center. Whether Brickey's civilian defense counsel had been present is not clear, but the detailed defense counsel participated and civilian counsel presumably learned of it through him if not otherwise.

5. Our information about the meeting of counsel, as well as our information about Brown's hospitalization (note 2, *supra*), is taken from post-trial pleadings and accompanying affidavits filed by the parties in connection with appellant's unsuccessful attempts to obtain from the military judge and the convening authority a limited hearing after the undisclosed information concerning Private Brown was discovered.

■ No reasonable doubt has been raised. We have reviewed Private Brown's testimony, both as to its content and its impact in the context of the whole trial. We see it as occasionally self-serving and lacking complete candor, but we can discern no basis for the assertion that he falsified, misunderstood, or hallucinatorily imagined the details of his receiving from Brickey on 28 January a substance that later chemically proved to be methamphetamine. Also, ample credibility-related evidence on the record concerning Brown's involvement with drugs, a grant of immunity of him, and his poor reputation for truth-telling did not dissuade the triers of fact from believing his version of the events of 28 January. It is likewise apparent that in the days leading up to the taking of his deposition and in the taking of the deposition itself, neither side noted anything inconsistent with the medical opinion attesting to his testimonial capacity. Therefore, no reasonable doubt as to appellant's guilt is created by the information concerning Private Brown's brief hospitalization a month before his deposition was taken. The trial counsel's erroneous failure to disclose that information to the defense does not warrant reversal of the affected charges.

## II

The next assignment of error rests on appellant's affidavit reflecting a revelation made to his civilian appellate counsel. After reciting that he testified at an early stage of the trial, but only on the limited issue of voluntariness of a confession, and that he testified in extenuation and mitigation after the findings, the affidavit recites as follows:

I did not testify on the issue of guilt or innocence. I did not understand that I had the right to do that; I thought that I had to remain silent. The Military Judge did not advise me of my rights in this regard and I have no recollection that

anyone else so advised me. I thought I could refute the testimony of Timothy Brown and Special Agent Kailimai [who testified as to the events of 4 February 1978], but was never called to the stand. I did not understand what the legal situation was and was somewhat surprised when I was not called to testify, but I assumed at that time that I was not allowed to do so.

"Appellant is not alleging that his trial defense counsels did not tell him of this right, he simply does not remember." Supplemental Assignment of Error at 1, note 1. "Nevertheless," his brief asserts, "it is incumbent that the military judge insure as a matter of record that the appellant [*i. e.,* an accused] knows of the right to testify and understands it such that he can intelligently exercise or waive that right." *Id.* The error now alleged is that the military judge failed to do this in Brickey's trial.

■ We hold that no ineffectiveness of either judge or counsel has been shown.

■ The decision whether to testify in his or her own behalf is one to be made by an accused and the burden is unmistakably on counsel to provide full and careful advice in the matter. *See* ABA Criminal Justice Standard 4–5.2(a) (2d ed. 1979); ABA Criminal Justice Standards, The Prosecution Function and The Defense Function, sec. 5.2(a), Commentary at 238–39 (1971); DA Pamphlet 27–10, Military Justice Handbook: The Trial Counsel and The Defense Counsel, par. 64*f* and App. II item 9*f* (1962); *see also* ABA Code of Professional Responsibility, Canon 7, Ethical Considerations 7–7, 7–8 (1978).[6]

■ The military judge may assume that an accused represented by legally qualified counsel has been properly advised of his rights as a witness. The judge is not required to interrogate either accused or counsel to assure that this has been done.

---

6. Authors of the ABA Standard recommend that counsel make a record of any disagreement for use in the event of a later attack on effectiveness. We suggest that such a record might be made whenever the client elects not

to testify, whether or not there is any disagreement. *See* Polstein, Defending Minor Felony Cases, sec. 49, in 13 Trials: Model Trials 541 (Am.Jur.1967).

*See United States v. Endsley,* 10 U.S.C.M.A. 255, 27 C.M.R. 329 (1959); *compare* Manual for Courts-Martial, United States, 1969 (Revised edition), par. 53*h, with* Manual for Court-Martial, United States, 1951, par. 53*h.*

▮ Nevertheless, when the military judge deems it necessary, he may "satisfy himself that the accused is aware of any right to which he is entitled by inquiry of counsel or by explaining that right." Manual for Courts-Martial, United States, 1969 (Revised edition), par. 53*h* ; *id.,* App. 8b at A8–21; DA Pamphlet 27–2, Analysis of Contents: Manual for Courts-Martial, United States, 1969 (Revised edition), 10–2 (1970). We can find in this record of the trial of an intelligent accused with more than a minimum education, defended by experienced civilian and detailed defense lawyers, nothing to indicate to a military judge that he should use his discretion to assure that Brickey understood his rights as a witness. Indeed, when at an early stage of the trial, counsel announced, "Your honor, the accused will be testifying solely on the limited issue of the circumstances surrounding the taking of his statement," the judge might even more reasonably assume that he was dealing with an accused who was informed that his testimony need not be so limited.[7]

There was no error in failing to ascertain on the record that appellant had been advised of, or understood, his right to testify on the issue of guilt or innocence.

7. Appellant does not assert that his counsel were ineffective and we do not believe it incumbent upon us to examine the question in detail. *But cf. United States v. Rivas,* 3 M.J. 282, 286 (CMA 1977) (judge did not err in failing sua sponte to strike direct testimony of witness who on cross-examination invoked privilege against self-incrimination, but defense counsel should have moved to strike). Since the appellant does not assert that he was unadvised or misadvised, his only complaint can be that he wasn't made to understand. However, even if it be assumed that he did not understand at the time, his failure to testify necessarily must have been consistent with the tactics of his counsel. The record in this case convinces us that such tactics were wise and resulted

**III**

The remaining error assigned is likewise nonmeritorious. The claimed deficiency in the post-trial review stems from the fact that appellant was charged under Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892 (1976), with violating a lawful general regulation (Army Regulation 600–50) by wrongfully having methamphetamine in his possession (Specification 1 of Charge II) and by wrongfully selling methamphetamine (Specification 2 of Charge II), but was instead found guilty of violating Article 80 (attempts) by attempting to wrongfully have (Specification 1) and attempting to wrongfully sell (Specification 2) the methamphetamine.

▮ Strictly speaking, his offense was *attempting to violate the regulation* by attempting to have the drug in his possession and by attempting to transfer it. Accordingly, the exceptions and substitutions made in Specification 1 should have caused it to allege that the appellant did attempt to violate a lawful general regulation by attempting to have the drug in his possession, rather than only that he attempted to have the drug in his possession. Specification 2 should have been similarly changed. *United States v. Quick,* 50 C.M.R. 112, 113 n.1 (ACMR 1975). However, the variance is immaterial because the court's intention is clear and sufficiently definite to protect against subsequent prosecution for the same offense. *United States v. Darden,* 1 M.J. 574 (ACMR 1975); *see United States v. Quick, supra.*

in no prejudice to the appellant. *Compare United States v. Hurt,* 9 U.S.C.M.A. 735, 787–88, 27 C.M.R. 3, 55–56 (1958), *with United States v. Colarusso,* 18 U.S.C.M.A. 94, 39 C.M.R. 94 (1969); *cf. United States v. Small,* 48 C.M.R. 170, 172 (AFCMR 1974); *see also United States v. Eaglin,* 571 F.2d 1069, 1086–87 (9th Cir. 1977). Even if appellant could meet the burden of raising an issue as to the ineffectiveness of his counsel, reversal would not be required upon a showing that there was no prejudice. *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied;* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968); *see United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (D.C. Cir. 1973) *(DeCoster I).*

■ The asserted error is that the staff judge advocate did not, in his post-trial review, adequately advise the convening authority of the change in the nature of the offense and did not inform him that the elements of the offense included, besides those necessary to violate Article 80, those necessary to violate Article 92. Relief is not required, for any error was waived by the failure of the defense counsel to object when commenting upon the post-trial review. *United States v. Barnes*, 3 M.J. 406 (CMA 1977).

## IV

■ Besides the errors asserted by appellate counsel, the civilian trial defense counsel contends that the military judge erred by refusing to give a requested accomplice instruction in relation to one of the Specifications. Note 1, *supra*.

The trial defense counsel requested that the military judge give the usual cautionary instruction to the court members concerning the testimony of Private Brown as an accomplice in relation to Charge I (soliciting Brown to possess marihuana). The judge agreed and did so, giving an instruction that required the court members to first decide whether Brown was an accomplice and, if so, to treat his testimony with great caution. The court members acquitted Brickey of this offense.

Counsel also requested an accomplice testimony instruction pertaining to the two Specifications of Charge II, which were also offenses in which Private Brown was directly involved. The military judge declined to give the instruction in relation to Specification 1 (wrongfully possessing amphetamine on 28 January) on the basis that Brown was not involved in Brickey's possession of the drug leading up to the transfer,

but only in the alleged transfer itself. The military judge also declined to give the accomplice testimony instruction in relation to the alleged transfer (Specification 2) for the reason that the only evidence showed that Private Brown, to whom the transfer was made, was working for the military police, his purpose was but to deliver the drug to the police, and he did so. It is this latter refusal to instruct the court members concerning the weight to be given the testimony of an accomplice that is alleged as error. We hold that the judge ruled correctly. *United States v. Grimm*, 6 M.J. 890, 895 n.23 (ACMR 1979).[8]

The findings of guilty and the sentence are affirmed.

Judge WATKINS and Judge LEWIS concur.

---

8. Moreover, the court members were instructed that all of Brown's testimony was to be scrutinized closely because he was testifying under a grant of immunity. *Cf. United States v. Leyva*, 8 M.J. 74 (CMA 1979). Parenthetically, we note that the immunity was not granted by the convening authority who acted on this record, nor is there the slightest indication that his staff judge advocate was involved. The grant was sought and obtained from Brown's conven-

ing authority at Fort Lewis by a trial counsel who was assigned to the Eighth Army trial center rather than to the Corps staff judge advocate office. Therefore, we are not required to assume that the Corps staff judge advocate was disqualified from preparing the post-trial review. *Cf. United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 65, 48 C.M.R. 534, 536 (1974); *United States v. Kennedy*, 8 M.J. 577, 580–81 (ACMR 1979).